DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. THOMAS

_____

LAWRENCE CARTY, ET AL,

    PLAINTIFFS,           CIVIL ACTION NUMBER:

    -vs-                  94-78

  JOHN DEJONGH, ET AL,

    DEFENDANTS.

  _____

    ORAL ARGUMENT VIA TELEPHONIC COMMUNICATIONS

DATE: APRIL 29, 2009

COURT REPORTER LOCATED AT:

MITCHELL H. COHEN UNITED STATES COURTHOUSE

      ONE JOHN F. GERRY PLAZA,

      CAMDEN, NEW JERSEY, 08101

**B E F O R E:**

THE HONORABLE STANLEY S. BROTMAN, UNITED STATES DISTRICT

COURT, DISTRICT OF NEW JERSEY, ASSIGNED TO THE UNITED

STATES VIRGIN ISLANDS


**A P P E A R A N C E S:**

ERIC BALABAN, ESQUIRE

AND

BENJAMIN A. CURRENCE, ESQUIRE

ATTORNEYS FOR THE PLAINTIFFS


WARREN WILLIAMS, ESQUIRE,

ASSISTANT ATTORNEY GENERAL

ATTORNEY FOR THE DEFENDANTS


STEPHEN J. DANER, CCR, RPR,

OFFICIAL COURT REPORTER

UNITED STATES DISTRICT COURT

1    (The following takes place via telephonic communications

2    from the chambers of the Honorable Stanley S. Brotman,

3    United States District Court, District of New Jersey,

4    designated to the United States Virgin Islands, on

5    Wednesday, April 29, 2009)

6              THE COURT:  Hello.  Good morning.

7              Who is on the call so far?

8              MR. WILLIAMS: Warren Williams, from the

9    Department of Justice, Your Honor.

10             THE COURT:  Yes.  We understand you are to be on

11   the call, today.

12             Where is Mr. Schrader?

13             MR. WILLIAMS: No, Your Honor, not that I know,

14   Your Honor.  I do not believe so.

15             THE COURT:  Let me ask is the court reporter on?

16             THE COURT REPORTER: Yes, Your Honor.

17             THE COURT: Mr. Balaban?

18             MR. BALABAN: Yes, Your Honor, I'm here.

19             THE COURT:  Everybody is -- Angelia, are you

20   there?

21             LAW CLERK: I'm here.

22             THE COURT:  All right.

23             MR. CURRENCE: Ben Currence, lurking in the

24   background.

25             THE COURT:  And Ben Currence, not lurking.  You

1    are making yourself very visible by saying you are there.

2            Mr. Williams, are you acquainted with this

3    matter?

4            MR. WILLIAMS: Vaguely, Your Honor.

5            THE COURT:  Hello.

6            MR. WILLIAMS: Vaguely, Your Honor.  I'm aware of

7    this Court case, been involved in it once or twice before,

8    and was asked yesterday afternoon to call in and be on

9    this case.

10           THE COURT:  Well, we're proceeding as though you

11    are acquainted with it.  It's the problem of the Attorney

12    General's Office here.  We have tried to make this call a

13    week ago.  We are advised that Mr. Schrader was ill.  I

14    can understand that happening.  We also -- I think I was

15    informed that he had some sort of a back problem; is that

16    so?

17           MR. WILLIAMS: I'm not aware why Attorney

18    Schrader is unavailable, Your Honor, so I really cannot

19    tell you why.  I just was told yesterday afternoon to be

20    --

21           THE COURT:  Who told you that?

22           MR. WILLIAMS: Carol Thomas, the Chief of Civil,

23    Your Honor.

24           THE COURT:  Now, so that the record will be

25    complete at this point, I tried to reach Mr. Schrader

myself last week on several calls.  First couple days I
got no response from his office.  The secretary apparently
was away.  I got her when she got back and I -- before I
even got her I left messages on Mr. Schrader's phone, on
his voicemail, advising him to, at least I recognized he
was out ill, but I had to have a response to when we're
going to reset this motion, that it could not be heard
last Monday, a week ago, last Monday.

Now he never responded.

As a result, this Court contacted the Chief of
the Litigation and made her acquainted with the problem
and thus I assume your assignment.

All right, Mr. Balaban, let's proceed.

MR. BALABAN: Your Honor, there were several
issues for the Court to resolve.

The first, most pressing, is the defense failure
to abide by the Court's scheduling order.  The provision
at issue that is subject to the defendant's motion to
exclude evidence requires them to file a response noting
their disputes or any remedial efforts rendering no longer
accurate, the findings of the experts, Doctor Metzner and
Mr. Martin, whose reports have been filed with this Court.

Just to review the bidding, on April 17th, the
plaintiff filed their motion to exclude evidence based on
defendant's disobedience of that provision of the Court's

scheduling order.  To date, the defendants haven't filed a response.

I briefly want to review the facts that are essential to the Court's resolution of the plaintiff's motion.

On March 13th, the Court entered a scheduling order sitting deadlines for the parties preparation for the May 28th hearing in this case.

At issue at the hearing is the defendant's motion to terminate settlement agreement.  Plaintiff's opposed termination and filed the aforementioned expert reports in support of their opposition.  The reports document a pattern of abuses and unconstitutional conditions, systemic problems at the CJC and CJC Annex, and within the Bureau of Corrections that threaten the lives and safety of prisoners and staff.

Among the more notable findings are the following:

The defendants failed to protect prisoners from harm from fellow prisoners by appropriately classifying and housing them;

The defendants don't maintain an adequate or sufficiently trained staff to carry out basic security functions at the jail;

They failed to institute and maintain

appropriate securities system and procedures and essential systems such as door control panels remain inoperable and unreliable as this Court has noted on several occasions in the past few years, and found defendants in contempt based upon its findings.

The defendants also have failed to implement a reliable disciplinary system, and as a result, prisoners are denied the most basic aspects of due process, including a right to notice of the rules they violated, a right to a hearing, a right to appeal disciplinary actions, contraband, including weapons, phones, and drugs readily available throughout the jail.

The jail has not instituted a system to prevent contraband from entering the facilities, or for investigating how contraband gets to prisoners either from staff, family members, or otherwise.

Prisoner lives also been subjected to excessive and unnecessary uses of force, and have been improperly restrained at the jail.

The jail doesn't have a reliable system in place to investigate use of force incidents, and to discipline staff where appropriate. And staff has not, is not trained in the use of force techniques.

Regarding Doctor Metzner's findings, they echo the finding he has made on the three previous tours.

1    These are findings that were the basis for the Court

2    holding the defendants in contempt in February, 2007.

3         To sum up, the defendants still do not have a

4    reliable health care system.  They failed to implement a

5    comprehensive set of health care policies and procedures

6    consist with accepted medical practices.  Seriously

7    mentally ill prisoners are not adequately treated, nor

8    adequately housed.  As a result, their serious health care

9    needs are disregarded, resulting in unnecessary suffering.

10        The Court, in setting a tight discovery schedule

11   in the scheduling order acknowledged the serious issues

12   raised by their experts, and that by virtue of the

13   automatic stay provision of the Prison Litigation Reform

14   Act, plaintiffs currently are denied even the most basic

15   protections that are provided in the agreement.

16        When the Court entered the order, it admonished

17   both parties to abide by the deadlines, and the Court

18   noted that the defendant's previous disobedience of Court

19   orders, and stated, quite frankly and plainly, that it

20   would not tolerate there be disobedience of this order.

21        Again, the one provision at issue, that Your

22   Honor required defendants, was by April 7th to identify

23   with specificity each finding and opinion of Doctor

24   Metzner's and Mr. Martin's reports that they disputed or

25   claimed no longer be accurate due to their own remedial

efforts.  And, for each finding and opinion they dispute
or claim was inaccurate, defendants had to identify all
persons with relevant knowledge, and produce all documents
establishing the basis for defendant's dispute or
inaccuracy.

The defendant simply ignored the scheduling
order.  They didn't ask this Court to reconsider the order
and extend the deadline.  Rather, on April 7th, they filed
a document entitled a response, where they simply declared
that they will file on May 15th a comprehensive progress
report detailing their remedial efforts.

That would be more than a month later, and less
than two weeks before the scheduled hearing in this case.

The defendants didn't seek the Court's leave.
They didn't offer any reason or explanation for why they
were disobeying the Court's deadline.  They simply
aggregated to themselves the power to amend the Court's
order, to set a deadline almost six weeks later, and
simply told the Court that when they intended to file.

Your Honor, Third Circuit has been consistent
that scheduling orders lie at the heart of case management
and should never be flouted.  Again, quoting from a case,
Turner versus Schering Plough, 901 F.2nd, 335, which is a
Third Circuit case cited in our brief, the reason for this
is simple.  Scheduling orders are designed to offer a

1  degree of certainty in pre-trial proceedings insuring that

2  at some point the parties and the pleadings will be fixed,

3  and the case will proceed, unquote.

4         The Third Circuit has, the Third Circuit has not

5  hesitated to exclude evidence based on party disobedience

6  of scheduling orders far less egregious than the

7  defendants, here.

8         THE COURT:  I noticed in the file there was a

9  motion to amend the scheduling order by Schrader, Mr.

10  Schrader, dated April 16th, 2009.

11        Did you get that?

12        MR. BALABAN: Yes, Your Honor.  I can address

13  that, now.

14        You are correct that there was a one page motion

15  filed 10 days after the deadline on April 16th.  This was

16  filed a day after I spoke with Mr. Schrader in an effort

17  to resolve this matter.  And after that, we were unable to

18  resolve it, I said to Mr. Schrader, that we were going to

19  file a motion to exclude evidence because the defendants

20  had, did not have the authority to simply set their own

21  deadline and failed to ask the Court to amend the

22  deadline.

23        The next day the defendants filed their one page

24  motion to amend.

25        There is a standard for asking for a motion to

amend. It should be done before the deadline applicable,

and it must demonstrate good cause under Rule 16 of the

Federal Rules of Civil Procedure.

That means they have to show that the deadlines

could not be met despite their diligence.  That's quoting

from the case of Globespanivarant, which is cited in our

brief, Your Honor.

Nowhere in defendant's motion to amend did they

demonstrate good cause.  Nowhere do they state that

despite their diligence they could not comply with the

order.  They simply state that the Court should amend the

order because that would serve the interests of both

parties because they're fixing the problems.

Again, Your Honor, it hardly meets the

standards, and was a post-hoc motion filed within a day

after we stated that we would be seeking to exclude

evidence.

If I could return to the standard that the Third

Circuit has apply, Your Honor.

The Courts of this Circuit have considered four

factors when deciding on the appropriate sanction

disobeying scheduling and discovery orders.

The first is whether the violation disrupts the

trial preparation process.

The second is whether the innocent party is

1    prejudiced at, if the evidence is admitted.

2           The third is whether the evidence of the -- the

3    exclusion of the evidence is the only means to cure the

4    prejudice short of postponing trial.

5           And, the fourth, is whether the disobedience was

6    either unintentional or willful.

7           This is from the case of Meyers versus penny

8    pack wood, again, a Third Circuit case cited in our brief.

9           Here, Your Honor, all the factors weigh heavily

10    in favor of excluding the evidence.

11           First, the defendants undoubtedly have disrupted

12    the trial preparation process by violating the scheduling

13    order.  In fact, that could be presumed that the

14    scheduling order itself set deadlines for trial

15    preparation.  The defendants violated those deadlines,

16    continue to violate them.  So, clearly, the plaintiff's

17    preparations for hearing had been disrupted pursuant to

18    the scheduling order.

19           Second, is plaintiffs, again, undoubtedly are

20    prejudiced if this Court permits defendants to submit the

21    evidence they failed to disclose and rewards their

22    disobedience.

23           In this context, the Third Circuit has held that

24    prejudice does not mean, quote, irredeemable harm.

25    Unquote.  But rather, an impediment to, again, quote, a

1    parties ability to prepare effectively a full and complete

2    trial strategy.  Unquote.

3            That's from the case of Ware versus Rodale

4    Press, 322 F.3rd, 218.  A 2003 Third Circuit case.

5            In fact, the Court's of this Circuit have

6    presumed prejudice where a party violates a scheduling

7    order.

8            We refer the Court to Astrazeneca AB, Eastern

9    District of Pennsylvania, a case from 2003, cited in our

10    brief.

11            Here, Your Honor, the Court set a rigorous

12    schedule under its March 13th order for preparation for

13    the hearing scheduled to begin in less than a month.  The

14    April 7th deadline required the defendants to identify all

15    disputes with plaintiff's experts, to identify all

16    personnel with relevant knowledge, and produce all

17    documents establishing the basis for their dispute or

18    remedial efforts.

19            This evidence is absolutely central to our trial

20    preparation since it would set the disputed issues for the

21    hearing.

22            The April 7th deadline allowed plaintiffs enough

23    time before the hearing to engage in written discovery, to

24    propound interrogatories, and request for production,

25    request for admission regarding the issues in our expert's

reports that the defendants disputed, to depose those

personnel who defendants identified as having relevant

information, to prepare cross-examinations of personnel,

to prepare our own experts to be crossed on the, by

defendant on the findings that the defendant disputes, and

to allow our experts sufficient time to review documents

and information regarding whatever remedial efforts the

defendants made since their tours.

It also allowed plaintiffs to identify areas

where we needed additional evidence whether by our own

experts, by other witnesses, or through documents we could

obtain through discovery.

This opportunity, Your Honor, has been lost.  We

don't have enough time to engage in meaningful discovery

as described before the hearing which begins in less than

a month.  Even if --

THE COURT:  The date of the hearing is what

date, now?

MR. BALABAN: May 27th, Your Honor.

THE COURT:  We allocated two days for that, I

believe.

MR. BALABAN: Well, we have -- what we have, Your

Honor, is, we were scheduled to go through into the

following week.  We have at least two days of testimony.

I prepared -- the experts to be able to testify for at

least a day each.  Doctor Metzner is prepared to testify

May 28th, and Mr. Martin will be prepared to begin

testifying the following Monday.  I believe we have three

total days, that at least set aside, and again, we don't

we have any information from defendants so we don't know

or have any idea of how much additional time we need.

THE CLERK:   June 2nd, as well, or you don't

know?

MR. BALABAN: I don't know.  I don't know.  Of

course a lot of that might be resolved by the decision

here, of course.

Just to returning to the prejudice, Your Honor.

Clearly based upon the facts, we have been prejudiced in

our ability to prepare effectively a full and complete

trial strategy, which is a quote from the Ware case I

cited earlier, the Third Circuit case which is the

standard for prejudice, and clearly we meet and exceed

that standard.

The third, the, short of dismissing defendant's

motion to terminate with prejudice which this Court

certainly has the power to order under Federal Rule 16 for

violating its scheduling order, no sanctions other than

exclusion will remedy the prejudice to plaintiffs.  The

only way, Your Honor, we can meaningfully respond to

defendant's expert disputing our expert's findings, or on

the remedial efforts, is if this Court were to push back
the hearing date.  However, this Circuit, the Third
Circuit has been very clear that the exclusion of evidence
is warranted where the only other viable option to cure
prejudice to the innocent party is to vacate a trial date
to permit additional discovery. I recite the <u>Ware</u> case,
again.  I also cite the case of in re: TMI Litigation, 193
F.3D, 721, which is also cited in our brief.

In fact, Courts of this Circuit has held that
evidence should be excluded if -- (telephone rings)

THE COURT:  Is it clear?

Proceed.

MR. BALABAN: Again, just to repeat the point,
Courts of this Circuit repeatedly held evidence should be
excluded if its admission necessarily would delay or
disrupt trial.  This is from the <u>Meyers</u>  case cited
earlier. One of the leading cases establishing the factors
for the Court to consider.

The Courts of this Circuit following <u>Meyers</u> have
excluded evidence even when there is no set trial date and
the only prejudice to the innocent party would be to
further extend the discovery period.  In the case of
<u>Astrazeneca AB</u>, the case we cited earlier, the Court
excluded evidence even though, quoting from the case,
permitting evidence would not disrupt the orderly and

efficient trial of this case because no trial date has been set.  Unquote.

The Court there reasoned, again quoting from the case, to permit defendants to introduce the excluded evidence which defendants have offered no bona fide excuse for its dilatory conduct would be simply to ignore the pre-trial scheduling order and would cause the Court to extend pre-trial proceedings.

Here, Your Honor, the postponing the hearing date would post a far greater risk, and cause far greater damage to the plaintiffs than to the litigants in any of the cases we cited.  That is because the defendants mere filing of the termination motion automatically stays the substantive relief found in the settlement agreement.

Therefore, at this time the plaintiffs are bereft of the protections of the agreement and remain so until the Court resolves the defendant's motion.  That is why the Court set such a tight discovery schedule.

This is not just a theoretical exercise, Your Honor.  The experts that we were ordered by the Court to have produce reports again outline a litany of systemic problems that endanger the lives of our clients.

In light of these findings, delaying the hearing dates to allow us to conduct additional discovery is untenable, and potentially hazardous; it will extend the

automatic stay of the agreement of release; it will delay
the Court's decision on the termination motion; and, of
course, will divert the Court's, the parties, and the
Court's resources from solving these very serious issues
as we continue to litigate the defendant's termination
motion.

The fourth factor, Your Honor, for the Court to
consider under Meyers, and cases of the Third Circuit,  is
whether the defendant's disobedience here was inadvertent
or willful.

Here, again, there's really no question that the
defendants acknowledged that they are not complying with
the Court's deadline.  They acknowledge in their April 7th
response that they have not complied, and simply set their
own deadline without asking leave of the Court until the
plaintiffs raised the issue over a week later.

The defendants didn't make any effort to excuse
or explain there disobedience, nor could they, Your Honor.
Defendants have had the expert reports now for over a
month.  Even before they had the reports they were on
notice of the experts findings since the experts at exit
interviews and otherwise on the tours discussed their
findings with the officials while on site.

You will recall at the hearing we held in this
case on December 2nd the Warden discussed going over the

findings of Mr. Martin in particular who at that point was
the only expert who had toured, and of discussing the
findings with Mr. Martin.  They have known of the findings
for several months even before they received the report.

With regard to Doctor Metzner's report, for the
most part his findings are almost identical to the
findings in his previous reports that the defendants have
had ready access to all personnel and documents that they
would need in order to prepare a response, but failed to
do so.

Your Honor, in this regard we would point the
Court's attention to the case of Koplove versus Ford Motor
Company, which is 795 F.2D, 15.  Which is --

THE COURT:  795?

MR. BALABAN: A Third Circuit case in 1986, Your
Honor.  There, the Third Circuit upheld an exclusion order
of an expert report that was filed about a month after a
deadline in the scheduling order under circumstances
eerily similar to the circumstances here.

The Court in that case, the Third Circuit found,
quoting from the case, that the deadline for filing the
reports of any trial expert had passed a month earlier
with no expert having been identified by plaintiffs, and
no motion for an extension having been sought before the
deadline.  Unquote.

1    The Third Circuit in upholding the exclusion of

2    that report reasoned that plaintiffs had, again quoting

3    from the case, an obligation to provide the Court with a

4    record which affirmatively demonstrates with specificity

5    diligent efforts on their part, and unusual circumstances

6    which are frustrated their efforts.  Unquote.  To

7    designate their expert report by the Court ordered

8    deadline.

9    The Court in excluding the scheduling order

10   concluded, again quoting from the case, to require less is

11   to deprive trial Judges of the ability to effectively

12   manage the cases on their overcrowded dockets.  As Rule 16

13   recognizes, scheduling orders are at the heart of case

14   management.  If they can be disregarded without a specific

15   showing of good cause, their utility will be severely

16   impaired. Unquote.

17   Here, too, the defendants have failed to comply

18   with the scheduling order.  They failed to seek extension

19   as the Federal Rules require, until we notified them that

20   we would file our motion to exclude evidence, and raise

21   their failure to seek an extension as grounds for

22   sanctions.

23   Rather than providing the Court with a, quoting

24   from Koplove, record demonstrating diligent efforts to

25   comply, and the quote, unusual circumstances, unquote,

which prevented their compliance, defendants simply

announced they had extended the deadline by six weeks.

Their destain for the order, the Court's schedule order

that lies at the heart of case management impairs this

Court's ability to manage its docket and to resolve

defendant's termination motion.

Your Honor, we would note that this is hardly

the first time that defendants have disobeyed the Court's

orders.  Plaintiffs -- I went back through and looked at

the docket in this case and found that over the past four

years plaintiffs have been compelled no newer than six

times to seek sanctions against the defendants for their

ongoing and repeated violations of this Court's orders.

This Court has held multiple hearings admonishing

defendants to abide by its orders, and threatening the

very sanctions, and imposing sanctions where appropriate.

In just the past two years, Your Honor, the

Court was compelled to hold defendants in contempt of a

discovery order due to their repeated disobedience.  This

was the February 7th, 2007, order ordering defendants in

contempt, and in fact this Court has already excluded

evidence in this case based upon the defendant's

disobedience of a scheduling order.

The Court will recall that it held a hearing in

November, 2007, where, regarding the appropriateness of

contempt sanctions and plaintiff's pending motion for the

appointment of a receiver.  At that hearing Doctor Metzner

testified along with other personnel.  There was a

deadline set in the Court's scheduling order that was

entered before that hearing requiring defendants to

identify all witnesses by a date certain.  Defendants

failed to produce a witness list until shortly before

trial where they identified a Doctor Millen, and the

plaintiffs then opposed Doctor Millen's testimony.  The

Court will recall that before the hearing it held a

hearing in chambers where it excluded Doctor Millen's

testimony for failing to be compliant with the scheduling

order.

This pattern of disobedience, Your Honor,

supports the exclusion of evidence.

The Court, the Third Circuit in Ware cited

missed multiple discovery deadlines in excluding evidence.

The Third Circuit in the TMI Litigation case,

which we cited, also cited multiple violations of Court

orders that all pointed to wilful disobedience.

Your Honor, we would suggest that in fact

defendants' disobedience of the Court's March 13th

scheduling order is perhaps their worst.  Unlike the

previous orders that they have disobeyed, the March 13th

order was prompted by defendants own motion, and by that

motion, defendants are seeking to terminate the Court's
supervision over a wide sloth of conditions and operations
at the jail that are covered by the agreement.  Defendants
filed this motion despite the fact that they currently
operate under two separate contempt orders in which this
Court has documented how they're abiding disobedience of
both the agreement and the Court's remedial orders
endangers the lives and safety of Virgin Island prisoners
by openly flouting the deadline.  Defendants deny to the
plaintiff the right to gather and present the very
evidence that may preserve the agreement.  And, their
disobedience gives them a clear tactical advantage that
otherwise cannot be cured for prosecuting the termination
motion.

Based on all the facts, Your Honor, we believe
we've reached a point where exclusion of evidence is the
only remedy available to insure that the termination
motion can be decided promptly.  If the defendant wants to
introduce evidence regarding their remedial efforts, they
can otherwise do so.  But to allow them to do so in the
context of this termination motion would prejudice
plaintiffs in a way that cannot be otherwise cured.

That's why we asked this Court to rule today and
to grant their motion.

THE COURT:  All right.  Let's -- that's it?

1          MR. BALABAN: Yes, Your Honor.

2          THE COURT:  Mr. Williams.

3          MR. WILLIAMS: Yes, Your Honor.

4          We are opposed to plaintiff's motion, Your

5     Honor.  We will ask the Court to allow the motion of,

6     although according to plaintiff, that Attorney Schrader

7     filed may have been out, may have been delayed.

8          The issues in this case, Your Honor, is, is very

9     important to both the plaintiff and the defendant.  We

10     should be all be seeking the same end result in this case

11     and --

12          THE COURT:  I said that all along, all those

13     years, but that does not in any way say you can disregard

14     the rules and the regulations, and this is what's happened

15     here.

16          MR. WILLIAMS: I agree with Your Honor.

17          THE COURT:  I hear what's you're saying, but

18     it's not going to happen the way you want it.

19          MR. WILLIAMS:  Well --

20          THE COURT:  I don't mean to cut off your

21     arguments.  You can argue, but you will have to do a lot

22     of argument.

23          MR. WILLIAMS: Well, Your Honor, I have heard

24     what you said, and again, there's no question as to the

25     length of time this case has gone on.  There have been

many slips by the Government.  We are now in the best

position from the time these cases have been going on to

remedy the deficiencies that may still exist in our

system.

THE COURT:  You know, enumerate for me what the

-- where your position has changed, what the elements --

what are you in a better position today than in the past

14 years?

MR. WILLIAMS: Well, Your Honor, we have finally

hired a person, a Director that is knowledgeable, have

experience, and can bring to the job no politics, but

truly the experience and education, ability that we needed

from the top.  To fix the problem, normally you have to

come from the CEO, from the top, so we have done that.  We

have gotten him for the first time a knowledgeable

assistant.  Again, no politics.  But who have the

educational qualifications and experience, and we have

started a major recruitment -- we are testing and bringing

on more officers than we ever did in the past.  I mean,

these are positive steps that did not happen in the past.

We have done, and presently making the best efforts that

are needed to comply with any deficiencies that may exist.

THE COURT:  You made the motion to terminate --

MR. WILLIAMS: Yes.

THE COURT: --  I would think maybe you ought to

think in light of what you're telling me, maybe you ought
to think about withdrawing that motion because it
indicates -- what you are telling me indicates the problem
is working on, but it's not corrected the situation.  You,
by filing this motion to terminate have brought this
matter to a head.

What is there, then, today, new, today?  I lived
with this thing for 14 years. I'm very knowledgeable.  I
have found the Governor, the various Governors in contempt
four times, maybe five. I hear you talking, but talk I
have learned is very cheap, because I have got a beautiful
record replete with what you, the Government has said
doing this and doing that, and it's never done.  There are
no results.

Go ahead, I'll hear you.

MR. WILLIAMS: Your Honor, again, I agree that in
the past again we have not -- we may have made some miss
steps.  We presently feel that we put in place more or all
that is necessary so that this litigation can be
terminated.  I believe that is why Attorney Schrader filed
that motion.

Throughout the whole system we have made strides
that we have never done before.  And that is why he filed
the present motion.  It's unfortunate that he did not
comply with I think it is your April 7th Rule 16

scheduling.  However, again, I do not have the exact
information, but I believe that to have made all efforts
reasonably, diligently  to meet the requirement of the
Court, and because we have done that, we needed some
additional time to respond to the plaintiff's expert's
opinion, Attorney Schrader did file that motion, and the
Government plans to abide by that motion we filed for the
extended time and to provide to the plaintiff the names of
the personnels that the plaintiff may need to know about,
and any and all remedial efforts we have made to correct
the problems in the jail.

I, I know that this Court have gone beyond what
is or will be normally allowed.  I was the Director of the
Prison when Your Honor -- when Attorney General Cidron
(ph), again give Governor Turnbull a chance to do the
right thing.  He did provide us with some monies to begin
to make the corrections.  But this particular Governor
have given all of the funds.  We are now able to do what,
and this Director of Prisons can do what I can say when I
was the Director, I did not have the funds nor the ability
to do.  That is -- again now talking from a personal
prospective, that is the major difference.  I can see from
a personal view.

But, as the attorney for the Government now,
Your Honor, I am asking this Court again, and we come in

1   asking this Court, and this Court have always said I'll

2   give you another chance.  I'm asking this Court I believe

3   for the last chance.  Give us the additional time to

4   provide the appropriate response to the plaintiff expert

5   information so that we can show this Court, truly

6   demonstrate to this Court that all that this Court have

7   allowed us in the past will now be fruitful.  That's --

8   you know, the Government's position on this, Your Honor.

9              THE COURT:  Thank you very much.

10             Mr. Balaban, did you want to respond?

11             MR. BALABAN: Yes, Your Honor, I do.

12             It's breathtaking.  I am sort of struck dumb in

13  some ways by this argument.

14             Your Honor, this is a Court case.  Defendants

15  filed a motion to terminate.  They again, as Your Honor

16  found, set the wheels in motion to end the Court's

17  supervision over a large part of this case.  The Court

18  entered a scheduling order, admonished the defendants

19  based on their history of disobedience there would be

20  consequences if they did not abide by it.  And, they

21  didn't.  They failed to give any explanation.  They failed

22  to seek leave of the Court, as they have with regard -- I

23  would note, Your Honor, there is a pending motion for

24  reconsideration regarding another provision of the

25  agreement that they are currently violating that they did

file on.  They filed a one page post hoc motion to amend

this scheduling order a day after I spoke with Mr.

Schrader saying that you didn't file a motion and

scheduling order and we'll seek sanctions.  They filed a

one page motion to amend, and didn't show due diligence.

Doesn't even make a claim.  It doesn't have any support

stating what efforts they made to comply with the order.

It has this boiler plate statement amending the order

would promote judicial economy to conserve the parties

resources, and narrow the issues.  A completely

self-serving document, Your Honor, with no factual

support.  It certainly would benefit defendants to be able

to produce this evidence without giving the plaintiffs the

opportunity to be able to conduct discovery, to conduct a

valid cross-examination, to be able to present their side

of the story.  They're asking this Court to give them a

free reign to be able to present this evidence without

plaintiffs being able to meet their own burden, Your

Honor, and order termination, here.

They have violated order after order, and there

must be structure that is imposed here, Your Honor.  We

are not saying defendants cannot go ahead and do whatever

remedial efforts they want to do.  We have sincere and

profound doubts that their remedial efforts have changed

anything at the jail based upon the expert reports and

based upon their own review of conditions, Your Honor.

But, be that as it may, that's not the issue here, Your Honor.  The issue here, is, they have violated the Court's order.  Plaintiffs are clearly prejudiced in their ability to be able to defend the agreement by this disobedience.  They clearly would be prejudiced if the Court were to allow defendants at this late date to produce this evidence despite there disobedience.  There's no other way of curing this prejudice, Your Honor, other than excluding this evidence.

Defendants have a long pattern of willful disobedience that further supports this Court's excluding the evidence.  So let the defendants go in and engage in their remedial efforts.  We share the Court's concern that again this is nothing more than window dressing.  But at a minimum, when the defendants produce that evidence, and there will be a time when defendants certainly can produce that evidence, they can produce the evidence in fact in support of their defense of not having contempt sanctions entered against them, which is a separate matter still pending before the Court.

With regard to the termination motion, Your Honor, the Court set deadlines and they violated them.  We have been prejudiced, and the prejudice can only be cured by excluding the evidence.

1        The law of this Circuit fully supports the Court

2   taking this step.  In fact, the law of the Circuit fully

3   supports dismissal with prejudice to their motion to

4   terminate.

5        We want to have the opportunity to be able to at

6   least make the arguments that there are current and

7   ongoing violations, but we cannot be forced to have to

8   deal with evidence we have no way of being able to prepare

9   for.

10       We ask the Court to take this very reasonable

11   step now to introduce some sanity back into the

12   preparation for this case, and to uphold the Court's

13   authorities to be able to enter orders and require the

14   parties to abide by these orders.

15       THE COURT:  Mr. Williams, do you want to have

16   any response to that?

17       MR. WILLIAMS: Again, Your Honor, I would only

18   respond by stating that we may have filed the motion for

19   the extension late.  However, we do believe that by the

20   date that we requested we would be able to provide the

21   information that the plaintiff need.  If we had tried to

22   reach the Court's deadline, the information may have been

23   inadequate, and that would not have served the proper

24   justice on either part.

25       Again, as I state, we are both in the same boat,

1   trying to head in the same direction, and I, I beg the

2   Court that not to leave technicalities divert us from the

3   course that we both should be seeking for the same

4   shoreline we both should be seeking to go.

5           And, again, there's no doubt that we may have

6   filed, Attorney Schrader may have filed the extension

7   after the time limit, but it was done for a reason, and we

8   didn't try to limit the plaintiff will receive the

9   information that they need to receive, and we should be

10  able to resolve this matter for the benefit of the

11  prisoners, and for that reason I ask the Court to forgive

12  the Government for any -- and I don't want to use the

13  word, technicalities, because these rules are put in to

14  make sure that litigation is done in the proper manner and

15  people have enough time and not broad-sided.  But I ask

16  the Court to be lenient with the Government in this case

17  and grant us time and do not grant the plaintiff's motion.

18          THE COURT:  Well, I'll answer that.

19          First of all, the patience of the Court has been

20  surely tested.  I have had patience for 14 years.  And,

21  you know, it's a very long time that I have had promises

22  and promises and promises, and they never come through.

23          Now also there's only one Judge to a case and

24  that's the Judge in charge, and that's me.  No lawyer can

25  go ahead and just flagrantly, flagrantly ignore the

1  deadlines.  These deadlines were argued and everything

2  else before the Court approved those deadlines.  Now

3  that's the system.  If those deadlines aren't enforced and

4  the time requirements aren't enforced, the system falls

5  down, too.

6        Now I don't know what I'm going to do yet.

7  Regardless of what I do, that doesn't stop you from going

8  ahead and doing what remedial processes you think have to

9  be done.  We will have a trial on that.  It will be up to

10 whoever I decide has the burden of proof to show the case.

11 But certainly this is a very bad foot to get off.

12 Remember, the Government filed the motion to terminate.

13 That motion, if that motion wasn't filed things would have

14 gone on, you would have had the benefit of the experts

15 produced by the plaintiff, which you would have never

16 gotten.

17       The plaintiffs have put into this case so much

18 in terms of trying to lay down and give guidance on how a

19 jail should be properly run to avoid the Constitutional

20 violations.  And everybody just blinked.  It's the history

21 of this case, and the history that will come out in the

22 courtroom.  I assume that will be.

23       But you are the ones who brought this by filing

24 the motion to terminate.  Had you not filed the motion,

25 things would have gone on.  I would have heard things, and

we would make our inspections.  You say a new man has come

in.  I welcome the new man.  He was in my courtroom.  I

was pleased to see it.  Because -- maybe for the first

time it had some stability.  But that does not in any way

exclude, excuse the failure that you went ahead and filed

that motion to terminate.  You created it.  To go ahead

and your failure to comply to a schedule which, sure, was

tight, but we had to have those deadlines.

Anyway, I thank you very much.

Anyone else have any more to say?

MR. BALABAN: Your Honor --

THE COURT:  Yes.

MR. BALABAN: There were some other issues that

we would like to raise.

First off to the, as to the motion pending, we

would ask that the Court issue a prompt decision on

because it's impossible for us to prepare -- but we are

going to need, I think both parties would need some

certainty with regard to what evidence can be presented at

the hearing, so we would ask for a prompt ruling on that.

I'm sure defendants would want a prompt ruling as well.

Your Honor, there were three other issues that

were discussed with defendants that we would like to

raise, if we could do so, now?

THE COURT:  Go ahead.

1          MR. BALABAN: The second issue is the defendant's

2     failure to produce documents responsive to the requests

3     made by Doctor Metzner before, and shortly after his

4     expert tour.  We did speak with Mr. Schrader about this.

5     We sent letters to Mr. Schrader that were forwarded to the

6     Court.  Doctor Metzner conducted a tour in early February.

7     He submitted through counsel a set of document requests

8     and information requests to defendants on January 13th,

9     2009, over three months ago.  He also, he asked to review

10    the documents before his tour.  He didn't receive them,

11    nor did he receive them after his tour.

12          Following his tour, based upon his review, he

13    made a request for some additional documents and

14    information on February 23rd, 2009.  Again, those two

15    letters from counsel were previously submitted to the

16    Court.

17          As to that request, also, plaintiff have not

18    received any response.

19          The only response that we have gotten from the

20    defendant is a series of broken promises. We were told we

21    would get the January 13th documents during Doctor

22    Metzner's tour.  We did not.  We were then told we would

23    receive them shortly after the tour.  We did not.  We were

24    also told we would receive those documents on April 8th.

25    We didn't get the. And we were told we would get -- I was

1  told I would get them last week during my tour, and I

2  haven't received a single document.

3         We would ask the Court to enter an order at this

4  point that the documents be produced by the end of this

5  week.  We simply can no longer wait.

6         THE COURT:  You prepare the order.

7         MR. BALABAN: Thank you.

8         THE COURT:  You got it.

9         MR. BALABAN: Your Honor, the --

10        THE COURT:  Mr. Williams, do you object to that?

11        MR. WILLIAMS: No, Your Honor.

12        THE COURT:  All right.

13        Next.

14        MR. BALABAN: Your Honor, the third issue, Your

15 Honor, we haven't gotten a monthly report in over two

16 years.  I presume the Court hadn't gotten it in over

17 two years.

18        THE COURT:  I raised that at the various

19 hearings.

20        MR. BALABAN: Yes.  Its been raised at various

21 hearings.  But, Your Honor, the simply fact is, it hadn't

22 happened.  It's made it almost impossible for us to carry

23 out our monitoring responsibilities.

24        Again, we would ask that there be an order

25 entered that the reports be produced on the 8th of each

month.  If not, defendants be required to notify the Court
as to the reason, and that if defendants continue to fail
to produce them, the Court will consider entering
additional sanctions for each of the failures.

We also ask that all previous monthly reports
not been produced, to be produced immediately.  There are
two orders on this already, Your Honor.  We have reached a
point of saturation.  We simply need to have the Court
intercede again.

THE COURT:  Mr. Williams.

MR. WILLIAMS: Your Honor, although it does not
seem like an unreasonable request because I am not aware
as to why it was not produced, and I cannot at this point
have any idea as to the previous reports -- we have the
evidence or the information to produce it, I would request
the Court, that we're not ordered to produce those within
the next week because it may not have been prepared.  May
have been prepared -- we may not have those records
available at this time.  So I would request for the Court
to at least gives us, give us, knowing the personnel that
we have on staff and the effort these reports take, to
give us at least four months to produce it.

THE COURT: Four months?

MR. WILLIAMS: Yes, Your Honor.

THE COURT:  Now let me say something.  In effect

1    I told the various Directors as they came along, you've

2    got to get a computer system.  At one time I even had my

3    computer person from our District Court in the Virgin

4    Islands to furnish the jail, your jail, with three

5    computers that we contributed.  I think a couple reports

6    were computerized. After that, nothing happened.  You

7    never put a person on the job to put in the system, and I

8    have talked about it time and time and time again.  You

9    have not -- it's not an answer.  It's absolutely not an

10   answer.  I don't know what the answer is at this point.

11   It's work required, but you should be doing that.  I'm not

12   going to reward you for your inability to do it.  You were

13   ordered by the Court to do it.  You find the ability to do

14   it.  No one every came before me and said, look, we're not

15   going to give you the particular reports because A, B, C,

16   D, E, F, and G.  I just couldn't understand that.  And I

17   thought about it.  The record is replete with that.  How

18   do we know what's going on?  I can't exceed to your

19   request.  I just can't do it.

20          Now you've got to move a lot of people around to

21   get it done, but you have two weeks to get it done.  You

22   have 10, 20, 30 people on it. If were doing what you

23   should have been doing all these months, you would have

24   the information easily accessible.  I want it in two

25   weeks, and prepare that order, Mr. Balaban.

1          MR. BALABAN: Yes, Your Honor.

2          Finally, there is the, another one, other

3    pending issue, pending pleading, and that is the

4    defendant's motion for partial reconsideration of the

5    Court's March 13th order.  This was, again, a motion for

6    reconsideration that was filed in a timely fashion, unlike

7    their late filed motion to amend regarding the expert

8    reports.

9          This is pleading number 588, record 588, which

10   defendants requested the Court to vacate the portion of

11   its March 13th order requiring them to identify with

12   specificity portions of the expert reports and produce

13   evidence in support thereof that they believe do not

14   comply with the Prison Litigation Reform Act. That issue

15   we believe is now ripe for decision.

16          We are repaired to present arguments on that,

17   Your Honor.

18          The defendant's motion for reconsideration does

19   not cite -- backing up, Your Honor, under the local rules

20   which are applicable here, a motion for reconsideration

21   can be granted if there has been either an intervening

22   change in law, some new evidence that has become

23   available, or based on the need to correct clearly error

24   or manifest injustice.

25          THE COURT:  What item was that?

1          MR. BALABAN: Record 588 is the defendant's

2    motion, our position is 592.

3          The defendant failed to file a reply brief and

4    time has passed.  Defendants have made an argument that --

5    they don't cite any intervening change in law.  They

6    didn't cite any new evidence.  They seem to premise their

7    request based upon the need to correct clear legal error

8    or prevent injustice.  But you will recall, Your Honor,

9    their argument is that by requiring them to produce

10   evidence that the Court has improperly placed upon them a

11   burden of proof.  This is precisely the argument Your

12   Honor will recall, that the defendants made when the Court

13   held a hearing on the scheduling order.  The Court at that

14   time, rightfully held, that the requirement to produce

15   evidence is not a requirement regarding the burden of

16   proof.  That regardless which party had the burden of

17   proof, that the plaintiffs would nevertheless be entitled

18   to this evidence.

19          So this is an argument that defendants have

20   simply rehashed in their motion for reconsideration, and

21   they have cited no intervening change in law.

22          The Courts of the Third Circuit are quite clear

23   that the motions for reconsideration are not vehicles for

24   registering disagreement with a Court's initial decision

25   or for rearguing matters already addressed by the Court.

That is a quote from the case of Bostic versus AT&T of the
Virgin Islands, 312 F.2d, 731, from 2004.  It's cited in
our brief.

There is no basis, therefore, for this Court to
reconsider that portion of its order.

We would also note, Your Honor, in addition
that, defendants did not --

(Telephone rings)

THE COURT:  Hold on --

MR. WILLIAMS: I'm sorry, another call was on my
line.

THE COURT:  Hello.

MR. WILLIAMS: Yes.

MR. BALABAN: I'm here, Your Honor.

THE COURT:  Go ahead.

MR. BALABAN: Your Honor, we note that defendants
have treated their motion for reconsideration as if it's
self-executing.  They didn't ask for a hearing before the
deadline for them to produce this evidence.  That deadline
was in fact April 14th.  They simply filed this motion,
let it sit, and disobeyed the April 14th deadline.

Again, it's not the way litigation is supposed
to work, Your Honor.  A motion for reconsideration and
motion for, to amend are not self-executing, but must be
granted by the Court.  However, defendants have failed to

```
 1    produce the evidence ordered.

 2              To sum up, Your Honor, the --

 3              (Telephone rings)

 4              THE COURT:  Hello.

 5              MR. BALABAN: Yes.

 6              MR. WILLIAMS: I'm sorry, Your Honor, the call --

 7              THE COURT:  Shut off your phone.

 8              Hello.

 9              MR. BALABAN: Yes, Your Honor.

10              THE COURT:  Yes.

11              MR. BALABAN: Just to conclude, there is no basis

12    for this Court to reconsider the deadline.  Defendants

13    provided no basis --

14              (Telephone rings)

15              THE COURT:  Hello.

16              MR. BALABAN: Yes, Your Honor.

17              THE COURT:  Mr. William, are you still there?

18              MR. WILLIAMS: I'm still here, and I just

19    informed the switchboard to make sure no calls come

20    through to this number.

21              THE COURT:  Thank you.

22              MR. BALABAN: Your Honor, again there's no basis

23    under the local rule for the Court to reconsider its

24    deadline.  And, defendants, again, have completely flouted

25    all practice by treating their motion for reconsideration
```

as if it were self-executing.

Plaintiffs are entitled to the evidence the Court ordered.  They would be entitled if they had the initial burden for demonstrating current and ongoing violations or a rebuttal burden to demonstrate ongoing violations for those areas where the defendants have met their initial burden.  The Court rightly decided that when it, before it entered the order on March 13th.

The Court should deny this motion for reconsideration as it should grant the motion --

(Telephone rings)

THE COURT: Hello.

MR. BALABAN: Yes, Your Honor.  That's all plaintiffs have with regards to the argument as to the motion for reconsideration.

THE COURT:  Mr. Williams.

MR. WILLIAMS: I'm still here, Your Honor.

THE COURT:  Do you want to respond.

MR. WILLIAMS:  Oh, Your Honor, I believe that our motion speaks for itself.

Unfortunately Attorney Schrader who prepared this motion and could properly respond to it is ill, and my response is just that I think the motion was filed -- Attorney Schrader will not file motions frivolously.  He would file motions that he feels defend the Government's

1  position and have the basis in law and fact, Your Honor.

2  I will then ask the Court to deny plaintiff's request now

3  and go forward with the motion filed by Attorney Schrader.

4      Again, I'm not familiar with the motion, but

5  Attorney Schrader will not just file a motion just to file

6  it, Your Honor.

7      THE COURT:  Well, the thing is this, I have the

8  papers before me.

9      Have you looked at these papers?

10     MR. WILLIAMS: No, Your Honor.

11     THE COURT:  When is Mr. Shrader going back to

12  his office?

13     MR. WILLIAMS: Your Honor, I, I, I cannot tell

14  you.  I can contact my Chief and I can call back the

15  Court, but at this point, I do not know, Your Honor. I

16  really do not know.

17     THE COURT:  Will you do this, I, I have the

18  papers before me and I have read the papers.  I would like

19  you to inquire of Mr. Shrader, does he stand on the papers

20  or does he himself what oral argument.  He can't be that

21  sick he can't answer that question.

22     MR. WILLIAMS: Yes, Your Honor.

23     THE COURT:  And then let me know.

24     MR. WILLIAMS: All right, Your Honor.

25     THE COURT:  And I'll proceed accordingly as to

1    what you tell me.

2              MR. WILLIAMS: Yes, Your Honor.

3              THE COURT:  I would like you also to find out --

4    I don't know what his condition is, but I  want you to

5    tell me what his physical condition is or why he is unable

6    to work, and also to let me know if he still is going to

7    be out when -- if I determine to have oral argument when I

8    can set oral argument -- when he will be back in the

9    office.

10             MR. WILLIAMS: Yes, Your Honor.

11             THE COURT:  Okay?

12             MR. WILLIAMS: Yes, Your Honor.

13             THE COURT:  Mr. Balaban, anything further?

14             MR. BALABAN: No, Your Honor.

15             Again, I think we said what we had to say, and

16   I'm sure the Court is aware that we have a hearing date in

17   less than a month.

18             THE COURT:  I understand it.  It's on my mind.

19             MR. BALABAN: We appreciate the Court expediting

20   the consideration and resolution of all these matters.

21             THE COURT:  All right.

22             Let me -- the Court Reporter, will you make a

23   transcript and as we have done before, you submit your

24   charges to the, I guess the Attorney General, is that how

25   it works, Mr. Balaban?

1           MR. BALABAN: That's how it works.

2           THE COURT:  You share it, is that how it's done?

3           MR. BALABAN: No. It's been you order --

4           THE COURT:  The Government has to pay it, right?

5           MR. BALABAN: Yes.

6           THE COURT:  The bill is to be sent to the

7    Government, but if the Court Reporter needs any help on

8    that, as Court Reporters have done work in Camden and

9    submitted the bills, and you can check with them.

10           Anything further today, gentlemen?

11           MR. WILLIAMS: Nothing on behalf of the

12   Government, Your Honor.

13           MR. BALABAN: No, Your Honor.

14           THE COURT:  All right.

15           THE CLERK:  Attorney Williams, who, until

16   Attorney Schrader returns, who will be reporting back?

17   Will it be you or Attorney Jacobs?  Who is the attorney in

18   contact with --

19           MR. WILLIAMS: Well, at this point Attorney

20   Jacobs is the head of the Civil Division.  It will be her.

21   She will then make a determination as to whether or not

22   she will be handling it or someone else.  But at this

23   point I will answer that you continue to report to her and

24   then she will make the determinations.

25           THE CLERK:  Okay.

1          THE COURT:  Okay.  I want you to recognize --

2     the Government to recognize that the Government by making

3     its motion to terminate has set off a whole course of

4     action here, and to keep that in mind.

5          MR. WILLIAMS: Yes, Your Honor.

6          THE COURT:  Anything further?

7          We will stand in recess at this time.

8          MR. BALABAN: Thank you, Your Honor.

9          THE COURT:  Thank you all very much.  Have a

10    good morning.

11    (At which time the matter was adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# **C E R T I F I C A T E**

I, Stephen J. Daner, C.C.R., Official United States Court Reporter and Certified Court Reporter of the State of New Jersey, do hereby certify that the foregoing is a true and accurate transcript of the testimony as taken stenographically by and before me at the time, place and on the date hereinbefore set forth.

I do further certify that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel and that I am not financially interested in this action.

S/STEPHEN J. DANER
STEPHEN J. DANER, C.C.R.
Certificate No. 30X100151400
Date: April 29, 2009

**0**

**08101** [1] - 1:23

**1**

**10** [2] - 10:15, 38:22
**13th** [9] - 6:6, 13:12, 22:22, 22:24, 35:8, 35:21, 39:5, 39:11, 43:8
**14** [3] - 25:8, 26:8, 32:20
**14th** [2] - 41:20, 41:21
**15** [1] - 19:13
**15th** [1] - 9:10
**16** [4] - 11:2, 15:21, 20:12, 26:25
**16th** [2] - 10:10, 10:15
**17th** [1] - 5:23
**193** [1] - 16:7
**1986** [1] - 19:15

**2**

**20** [1] - 38:22
**2003** [2] - 13:4, 13:9
**2004** [1] - 41:2
**2007** [3] - 8:2, 21:20, 21:25
**2009** [6] - 1:18, 3:5, 10:10, 35:9, 35:14, 48:22
**218** [1] - 13:4
**23rd** [1] - 35:14
**27th** [1] - 14:19
**28th** [2] - 6:8, 15:2
**29** [3] - 1:18, 3:5, 48:22
**2nd** [2] - 15:7, 18:25

**3**

**30** [1] - 38:22
**30X100151400** [1] - 48:22
**312** [1] - 41:2
**322** [1] - 13:4
**335** [1] - 9:23

**5**

**588** [3] - 39:9, 40:1
**592** [1] - 40:2

**7**

**721** [1] - 16:8
**731** [1] - 41:2
**795** [2] - 19:13, 19:14
**7th** [7] - 8:22, 9:8, 13:14, 13:22, 18:13, 21:20, 26:25

**8**

**8th** [2] - 35:24, 36:25

**9**

**901** [1] - 9:23
**94-78** [1] - 1:9

**A**

**AB** [2] - 13:8, 16:23
**abide** [6] - 5:17, 8:17, 21:15, 27:7, 28:20, 31:14
**abiding** [1] - 23:6
**ability** [8] - 13:1, 15:14, 20:11, 21:5, 25:12, 27:20, 30:5, 38:13
**able** [13] - 14:25, 27:18, 29:12, 29:14, 29:15, 29:17, 29:18, 30:5, 31:5, 31:8, 31:13, 31:20, 32:10
**absolutely** [2] - 13:19, 38:9
**abuses** [1] - 6:13
**accepted** [1] - 8:6
**access** [1] - 19:8
**accessible** [1] - 38:24
**according** [1] - 24:6
**accordingly** [1] - 44:25
**accurate** [3] - 5:21, 8:25, 48:8
**acknowledge** [1] - 18:13
**acknowledged** [2] - 8:11, 18:12
**acquainted** [3] - 4:2, 4:11, 5:11
**Act** [2] - 8:14, 39:14
**ACTION** [1] - 1:7
**action** [3] - 47:4, 48:13, 48:15
**actions** [1] - 7:11

**addition** [1] - 41:6
**additional** [8] - 14:10, 15:6, 16:6, 17:24, 27:5, 28:3, 35:13, 37:4
**address** [1] - 10:12
**addressed** [1] - 40:25
**adequate** [1] - 6:22
**adequately** [2] - 8:7, 8:8
**adjourned** [1] - 47:11
**admission** [2] - 13:25, 16:15
**admitted** [1] - 12:1
**admonished** [2] - 8:16, 28:18
**admonishing** [1] - 21:14
**advantage** [1] - 23:12
**advised** [1] - 4:13
**advising** [1] - 5:5
**affirmatively** [1] - 20:4
**aforementioned** [1] - 6:11
**afternoon** [2] - 4:8, 4:19
**aggregated** [1] - 9:17
**ago** [3] - 4:13, 5:8, 35:9
**agree** [2] - 24:16, 26:16
**agreement** [10] - 6:10, 8:15, 17:14, 17:16, 18:1, 23:3, 23:7, 23:11, 28:25, 30:5
**ahead** [8] - 26:15, 29:22, 32:25, 33:8, 34:5, 34:6, 34:25, 41:15
**AL** [2] - 1:5, 1:11
**allocated** [1] - 14:20
**allow** [5] - 14:6, 17:24, 23:20, 24:5, 30:7
**allowed** [4] - 13:22, 14:9, 27:13, 28:7
**almost** [3] - 9:18, 19:6, 36:22
**amend** [1] - 9:17, 10:9, 10:21, 10:24, 11:1, 11:8, 11:11, 29:1, 29:5, 39:7, 41:24
**amending** [1] - 29:8

**AND** [1] - 2:8
**Angelia** [1] - 3:19
**Annex** [1] - 6:14
**announced** [1] - 21:2
**answer** [6] - 32:18, 38:9, 38:10, 44:21, 46:23
**Anyway** [1] - 34:9
**appeal** [1] - 7:10
**applicable** [2] - 11:1, 39:20
**apply** [1] - 11:19
**appointment** [1] - 22:2
**appreciate** [1] - 45:19
**appropriate** [5] - 7:1, 7:22, 11:21, 21:16, 28:4
**appropriately** [1] - 6:20
**appropriateness** [1] - 21:25
**approved** [1] - 33:2
**APRIL** [1] - 1:18
**April** [14] - 3:5, 5:23, 8:22, 9:8, 10:10, 10:15, 13:14, 13:22, 18:13, 26:25, 35:24, 41:20, 41:21, 48:22
**areas** [2] - 14:9, 43:6
**argue** [1] - 24:21
**argued** [1] - 33:1
**argument** [10] - 24:22, 28:13, 40:4, 40:9, 40:11, 40:19, 43:14, 44:20, 45:7, 45:8
**ARGUMENT** [1] - 1:16
**arguments** [3] - 24:21, 31:6, 39:16
**aside** [1] - 15:4
**aspects** [1] - 7:8
**ASSIGNED** [1] - 2:3
**assignment** [1] - 5:12
**assistant** [1] - 25:16
**ASSISTANT** [1] - 2:13
**assume** [2] - 5:12, 33:22
**Astrazeneca** [2] - 13:8, 16:23
**AT** [1] - 1:20
**AT&T** [1] - 41:1
**attention** [1] - 19:12
**ATTORNEY** [2] - 2:13, 2:14
**Attorney** [16] - 4:11,

4:17, 24:6, 26:20, 27:6, 27:14, 32:6, 43:21, 43:24, 44:3, 44:5, 45:24, 46:15, 46:16, 46:17, 46:19
**attorney** [4] - 27:24, 46:17, 48:12, 48:14
**ATTORNEYS** [1] - 2:10
**authorities** [1] - 31:13
**authority** [1] - 10:20
**automatic** [2] - 8:13, 18:1
**automatically** [1] - 17:13
**available** [4] - 7:12, 23:17, 37:19, 39:23
**avoid** [1] - 33:19
**aware** [4] - 4:6, 4:17, 37:12, 45:16

**B**

**background** [1] - 3:24
**backing** [1] - 39:19
**bad** [1] - 33:11
**BALABAN** [35] - 2:7, 3:18, 5:14, 10:12, 14:19, 14:22, 15:9, 16:13, 19:15, 24:1, 28:11, 34:11, 34:13, 35:1, 36:7, 36:9, 36:14, 36:20, 39:1, 40:1, 41:14, 41:16, 42:5, 42:9, 42:11, 42:16, 42:22, 43:13, 45:14, 45:19, 46:1, 46:3, 46:5, 46:13, 47:8
**Balaban** [6] - 3:17, 5:13, 28:10, 38:25, 45:13, 45:25
**based** [11] - 5:24, 7:4, 10:5, 15:13, 21:22, 28:19, 29:25, 30:1, 35:12, 39:23, 40:7
**Based** [1] - 23:15
**basic** [3] - 6:23, 7:8, 8:14
**basis** [8] - 8:1, 9:4, 13:17, 41:4, 42:11, 42:13, 42:22, 44:1
**beautiful** [1] - 26:11
**become** [1] - 39:22
**beg** [1] - 32:1
**begin** [3] - 13:13,

15:2, 27:16
**begins** [1] - 14:15
**behalf** [1] - 46:11
**Ben** [2] - 3:23, 3:25
**benefit** [3] - 29:12, 32:10, 33:14
**BENJAMIN** [1] - 2:9
**bereft** [1] - 17:16
**best** [2] - 25:1, 25:21
**better** [1] - 25:7
**beyond** [1] - 27:12
**bidding** [1] - 5:23
**bill** [1] - 46:6
**bills** [1] - 46:9
**blinked** [1] - 33:20
**boat** [1] - 31:25
**boiler** [1] - 29:8
**bona** [1] - 17:5
**Bostic** [1] - 41:1
**breathtaking** [1] - 28:12
**brief** [7] - 9:24, 11:7, 12:8, 13:10, 16:8, 40:3, 41:3
**briefly** [1] - 6:3
**bring** [1] - 25:11
**bringing** [1] - 25:18
**broad** [1] - 32:15
**broad-sided** [1] - 32:15
**broken** [1] - 35:20
**Brotman** [1] - 3:2
**BROTMAN** [1] - 2:2
**brought** [2] - 26:5, 33:23
**burden** [8] - 29:18, 33:10, 40:11, 40:15, 40:16, 43:4, 43:5, 43:7
**Bureau** [1] - 6:15

### C

**C.C.R** [2] - 48:5, 48:21
**CAMDEN** [1] - 1:23
**Camden** [1] - 46:8
**cannot** [7] - 4:18, 23:13, 23:22, 29:22, 31:7, 37:13, 44:13
**care** [3] - 8:4, 8:5, 8:8
**Carol** [1] - 4:22
**carry** [2] - 6:23, 36:22
**CARTY** [1] - 1:5
**case** [48] - 4:7, 4:9, 6:8, 9:13, 9:21, 9:22, 9:24, 10:3, 11:6, 12:7,

12:8, 13:3, 13:4, 13:9, 15:15, 15:16, 16:6, 16:7, 16:16, 16:22, 16:23, 16:24, 17:1, 17:4, 18:25, 19:12, 19:15, 19:20, 19:21, 20:3, 20:10, 20:13, 21:4, 21:10, 21:22, 22:18, 24:8, 24:10, 24:25, 28:14, 28:17, 31:12, 32:16, 32:23, 33:10, 33:17, 33:21, 41:1
**cases** [5] - 16:17, 17:12, 18:8, 20:12, 25:2
**CCR** [1] - 2:16
**central** [1] - 13:19
**CEO** [1] - 25:14
**certain** [1] - 22:6
**certainly** [4] - 15:21, 29:12, 30:17, 33:11
**certainty** [2] - 10:1, 34:19
**Certificate** [1] - 48:22
**Certified** [1] - 48:6
**certify** [2] - 48:7, 48:11
**chambers** [2] - 3:2, 22:11
**chance** [3] - 27:15, 28:2, 28:3
**change** [3] - 39:22, 40:5, 40:21
**changed** [2] - 25:6, 29:24
**charge** [1] - 32:24
**charges** [1] - 45:24
**cheap** [1] - 26:11
**check** [1] - 46:9
**Chief** [3] - 4:22, 5:10, 44:14
**Cidron** [1] - 27:14
**Circuit** [26] - 9:20, 9:24, 10:4, 11:19, 11:20, 12:8, 12:23, 13:4, 13:5, 15:16, 16:2, 16:3, 16:9, 16:14, 16:19, 18:8, 19:15, 19:16, 19:20, 20:1, 22:16, 22:18, 31:1, 31:2, 40:22
**circumstances** [4] - 19:18, 19:19, 20:5, 20:25
**cite** [4] - 16:7, 39:19, 40:5, 40:6
**cited** [14] - 9:24, 11:6, 12:8, 13:9,

15:16, 16:8, 16:16, 16:23, 17:12, 22:16, 22:19, 40:21, 41:2
**Civil** [3] - 4:22, 11:3, 46:20
**CIVIL** [1] - 1:7
**CJC** [2] - 6:14
**claim** [2] - 9:2, 29:6
**claimed** [1] - 8:25
**classifying** [1] - 6:20
**clear** [1] - 16:3, 16:11, 23:12, 40:7, 40:22
**clearly** [5] - 12:16, 15:17, 30:4, 30:6, 39:23
**Clearly** [1] - 15:13
**CLERK** [4] - 3:21, 15:7, 46:15, 46:25
**clients** [1] - 17:22
**COHEN** [1] - 1:21
**communications** [1] - 3:1
**COMMUNICATIONS** [1] - 1:16
**Company** [1] - 19:13
**compelled** [2] - 21:11, 21:18
**complete** [3] - 4:25, 13:1, 15:14
**completely** [1] - 29:10, 42:24
**compliance** [1] - 21:1
**compliant** [1] - 22:12
**complied** [1] - 18:14
**comply** [8] - 11:10, 20:17, 20:25, 25:22, 26:25, 29:7, 34:7, 39:14
**complying** [1] - 18:12
**comprehensive** [2] - 8:5, 9:10
**computer** [1] - 38:2, 38:3
**computerized** [1] - 38:6
**computers** [1] - 38:5
**concern** [1] - 30:14
**conclude** [1] - 42:11
**concluded** [1] - 20:10
**condition** [2] - 45:4, 45:5
**conditions** [3] - 6:14, 23:2, 30:1
**conduct** [4] - 17:6, 17:24, 29:14
**conducted** [1] - 35:6

**consequences** [1] - 28:20
**conserve** [1] - 29:9
**consider** [3] - 16:18, 18:8, 37:3
**consideration** [1] - 45:20
**considered** [1] - 11:20
**consist** [1] - 8:6
**consistent** [1] - 9:20
**Constitutional** [1] - 33:19
**contact** [2] - 44:14, 46:18
**contacted** [1] - 5:10
**contempt** [8] - 7:4, 8:2, 21:18, 21:21, 22:1, 23:5, 26:9, 30:19
**context** [2] - 12:23, 23:21
**continue** [4] - 12:16, 18:5, 37:2, 46:23
**contraband** [3] - 7:11, 7:14, 7:15
**contributed** [1] - 38:5
**control** [1] - 7:2
**correct** [4] - 10:14, 27:10, 39:23, 40:7
**corrected** [1] - 26:4
**Corrections** [1] - 6:15
**corrections** [1] - 27:17
**counsel** [4] - 35:7, 35:15, 48:12, 48:14
**couple** [2] - 5:1, 38:5
**course** [5] - 15:10, 15:11, 18:3, 32:3, 47:3
**Court** [101] - 3:3, 4:7, 5:10, 5:15, 5:22, 6:6, 7:3, 8:1, 8:10, 8:16, 8:17, 8:18, 9:7, 9:19, 10:21, 11:11, 12:20, 13:8, 13:11, 15:20, 16:1, 16:18, 16:23, 17:3, 17:7, 17:17, 17:18, 17:20, 18:7, 18:15, 19:20, 20:3, 20:7, 20:9, 20:23, 21:14, 21:18, 21:21, 21:24, 22:10, 22:16, 22:19, 23:6, 23:23, 24:5, 27:4, 27:12, 27:25, 28:1, 28:2, 28:5, 28:6, 28:14, 28:17, 28:22, 29:16,

30:7, 30:21, 30:23, 31:1, 31:10, 32:2, 32:11, 32:16, 32:19, 33:2, 34:16, 35:6, 35:16, 36:3, 36:16, 37:1, 37:3, 37:8, 37:16, 37:19, 38:3, 38:13, 39:10, 40:10, 40:12, 40:13, 40:25, 41:4, 41:25, 42:12, 42:23, 43:3, 43:7, 43:9, 44:2, 44:15, 45:16, 45:19, 45:22, 46:7, 46:8, 48:5, 48:6
**COURT** [73] - 1:1, 1:20, 2:3, 2:17, 2:18, 3:6, 3:10, 3:15, 3:16, 3:17, 3:19, 3:22, 3:25, 4:5, 4:10, 4:21, 4:24, 10:8, 14:17, 14:20, 16:11, 19:14, 23:25, 24:2, 24:12, 24:17, 24:20, 25:5, 25:23, 25:25, 28:9, 31:15, 32:18, 34:12, 34:25, 36:6, 36:8, 36:10, 36:12, 36:18, 37:10, 37:23, 37:25, 39:25, 41:9, 41:12, 41:15, 42:4, 42:7, 42:10, 42:15, 42:17, 42:21, 43:12, 43:16, 43:18, 44:7, 44:11, 44:17, 44:23, 44:25, 45:3, 45:11, 45:13, 45:18, 45:21, 46:2, 46:4, 46:6, 46:14, 47:1, 47:6, 47:9
**court** [1] - 3:15
**Court's** [28] - 5:17, 5:25, 6:4, 9:14, 9:16, 9:17, 13:5, 18:2, 18:3, 18:4, 18:13, 19:12, 21:3, 21:5, 21:8, 21:13, 22:4, 22:22, 23:1, 23:7, 28:16, 30:4, 30:12, 30:14, 31:12, 31:22, 39:5, 40:24
**COURTHOUSE** [1] - 1:21
**courtroom** [2] - 33:22, 34:2
**Courts** [5] - 11:20, 16:9, 16:14, 16:19, 40:22
**covered** [1] - 23:3
**created** [1] - 34:6
**cross** [2] - 14:3, 29:15

**cross-examination** [1] - 29:15
**cross-examinations** [1] - 14:3
**crossed** [1] - 14:4
**cure** [2] - 12:3, 16:4
**cured** [3] - 23:13, 23:22, 30:24
**curing** [1] - 30:9
**Currence** [2] - 3:23, 3:25
**CURRENCE** [2] - 2:9, 3:23
**current** [2] - 31:6, 43:4
**cut** [1] - 24:20

# D

**damage** [1] - 17:11
**DANER** [3] - 2:16, 48:21, 48:21
**Daner** [1] - 48:5
**date** [13] - 6:1, 14:17, 14:18, 16:2, 16:5, 16:20, 17:1, 17:10, 22:6, 30:7, 31:20, 45:16, 48:10
**DATE** [1] - 1:18
**Date** [1] - 48:22
**dated** [1] - 10:10
**dates** [1] - 17:24
**days** [5] - 5:1, 10:15, 14:20, 14:24, 15:4
**deadline** [24] - 9:8, 9:16, 9:18, 10:15, 10:21, 10:22, 11:1, 13:14, 13:22, 18:13, 18:15, 19:18, 19:21, 19:25, 20:8, 21:2, 22:4, 23:9, 31:22, 41:19, 41:21, 42:12, 42:24
**deadlines** [12] - 6:7, 8:17, 11:4, 12:14, 12:15, 12:17, 30:23, 33:1, 33:2, 33:3, 34:8
**deal** [1] - 31:8
**December** [1] - 18:25
**decide** [1] - 33:10
**decided** [2] - 23:18, 43:7
**deciding** [1] - 11:21
**decision** [5] - 15:10, 18:2, 34:16, 39:15, 40:24
**declared** [1] - 9:9

**defend** [2] - 30:5, 43:25
**defendant** [7] - 9:6, 14:5, 23:18, 24:9, 35:20, 40:3
**defendant's** [17] - 5:18, 5:25, 6:9, 8:18, 9:4, 11:8, 15:19, 15:25, 17:17, 18:5, 18:9, 21:6, 21:22, 35:1, 39:4, 39:18, 40:1
**Defendants** [8] - 18:19, 22:6, 23:3, 23:9, 28:14, 30:11, 40:4, 42:12
**DEFENDANTS** [2] - 1:13, 2:14
**defendants** [57] - 6:1, 6:19, 6:22, 7:4, 7:6, 8:2, 8:3, 8:22, 9:2, 9:14, 10:7, 10:19, 10:23, 12:11, 12:15, 12:20, 13:14, 14:1, 14:2, 14:8, 15:5, 17:4, 17:5, 17:12, 18:12, 18:17, 19:7, 20:17, 21:1, 21:8, 21:12, 21:15, 21:18, 21:20, 22:5, 22:25, 23:1, 28:18, 29:12, 29:22, 30:7, 30:13, 30:16, 30:17, 34:21, 34:23, 35:8, 37:1, 37:2, 39:10, 40:12, 40:19, 41:7, 41:16, 41:25, 42:24, 43:6
**defendants'** [1] - 22:22
**defense** [2] - 5:16, 30:19
**deficiencies** [2] - 25:3, 25:22
**degree** [1] - 10:1
**DEJONGH** [1] - 1:11
**delay** [2] - 16:15, 18:1
**delayed** [1] - 24:7
**delaying** [1] - 17:23
**demonstrate** [4] - 11:2, 11:9, 28:6, 43:5
**demonstrates** [1] - 20:4
**demonstrating** [2] - 20:24, 43:4
**denied** [2] - 7:8, 8:14
**deny** [3] - 23:9, 43:9, 44:2
**Department** [1] - 3:9
**depose** [1] - 14:1

**deprive** [1] - 20:11
**described** [1] - 14:15
**designate** [1] - 20:7
**designated** [1] - 3:4
**designed** [1] - 9:25
**despite** [4] - 11:5, 11:10, 23:4, 30:8
**destain** [1] - 21:3
**detailing** [1] - 9:11
**determination** [1] - 46:21
**determinations** [1] - 46:24
**determine** [1] - 45:7
**difference** [1] - 27:22
**dilatory** [1] - 17:6
**diligence** [3] - 11:5, 11:10, 29:5
**diligent** [2] - 20:5, 20:24
**diligently** [1] - 27:3
**direction** [1] - 32:1
**Director** [4] - 25:10, 27:13, 27:19, 27:20
**Directors** [1] - 38:1
**disagreement** [1] - 40:24
**disciplinary** [2] - 7:7, 7:10
**discipline** [1] - 7:21
**disclose** [1] - 12:21
**discovery** [12] - 8:10, 11:22, 13:23, 14:12, 14:14, 14:6, 16:22, 17:18, 17:24, 21:19, 22:17, 29:14
**discussed** [3] - 18:22, 18:25, 34:23
**discussing** [1] - 19:2
**dismissal** [1] - 31:3
**dismissing** [1] - 15:19
**disobedience** [19] - 5:25, 8:18, 8:20, 10:5, 12:5, 12:22, 18:9, 18:18, 21:19, 21:23, 22:14, 22:20, 22:22, 23:6, 23:12, 28:19, 30:6, 30:8, 30:12
**disobeyed** [3] - 21:8, 22:24, 41:21
**disobeying** [2] - 9:16, 11:22
**dispute** [3] - 9:1, 9:4, 13:17
**disputed** [3] - 8:24, 13:20, 14:1
**disputes** [3] - 5:20, 13:15, 14:5
**disputing** [1] - 15:25

**disregard** [1] - 24:13
**disregarded** [2] - 8:9, 20:14
**disrupt** [2] - 16:16, 16:25
**disrupted** [2] - 12:11, 12:17
**disrupts** [1] - 11:23
**DISTRICT** [4] - 1:1, 2:2, 2:3, 2:18
**District** [4] - 3:3, 13:9, 38:3
**divert** [2] - 18:3, 32:2
**Division** [1] - 46:20
**DIVISION** [1] - 1:2
**docket** [2] - 21:5, 21:10
**dockets** [1] - 20:12
**Doctor** [12] - 5:21, 7:24, 8:23, 15:1, 19:5, 22:2, 22:8, 22:9, 22:11, 35:3, 35:6, 35:21
**document** [5] - 6:13, 9:9, 29:11, 35:7, 36:2
**documented** [1] - 23:6
**documents** [11] - 9:3, 13:17, 14:6, 14:11, 19:8, 35:2, 35:10, 35:13, 35:21, 35:24, 36:4
**done** [14] - 11:1, 25:14, 25:21, 26:13, 26:23, 27:4, 32:7, 32:14, 33:9, 38:21, 45:23, 46:2, 46:8
**door** [1] - 7:2
**doubt** [1] - 32:5
**doubts** [1] - 29:24
**down** [2] - 33:5, 33:18
**dressing** [1] - 30:15
**drugs** [1] - 7:11
**due** [4] - 7:8, 8:25, 21:19, 29:5
**dumb** [1] - 28:12
**during** [2] - 35:21, 36:1

# E

**early** [1] - 35:6
**easily** [1] - 38:24
**Eastern** [1] - 13:8
**echo** [1] - 7:24
**economy** [1] - 29:9
**education** [1] - 25:12
**educational** [1] -

25:17
**eerily** [1] - 19:19
**effect** [1] - 37:25
**effectively** [3] - 13:1, 15:14, 20:11
**efficient** [1] - 17:1
**effort** [3] - 10:16, 18:17, 37:21
**efforts** [17] - 5:20, 9:1, 9:11, 13:18, 14:7, 16:1, 20:5, 20:6, 20:24, 23:19, 25:21, 27:2, 27:10, 29:7, 29:23, 29:24, 30:14
**egregious** [1] - 10:6
**either** [4] - 7:15, 12:6, 31:24, 39:21
**elements** [1] - 25:6
**employee** [2] - 48:12, 48:13
**end** [2] - 24:10, 28:16, 36:4
**endanger** [1] - 17:22
**endangers** [1] - 23:8
**enforced** [2] - 33:3, 33:4
**engage** [3] - 13:23, 14:14, 30:13
**enter** [2] - 31:13, 36:3
**entered** [7] - 6:6, 8:16, 22:5, 28:18, 30:20, 36:25, 43:8
**entering** [2] - 7:14, 37:3
**entitled** [4] - 9:9, 40:17, 43:2, 43:3
**enumerate** [1] - 25:5
**ERIC** [1] - 2:7
**error** [2] - 39:23, 40:7
**ESQUIRE** [3] - 2:7, 2:9, 2:12
**essential** [2] - 6:4, 7:1
**establishing** [3] - 9:4, 13:17, 16:17
**ET** [2] - 1:5, 1:11
**evidence** [47] - 5:19, 5:24, 10:5, 10:19, 11:17, 12:1, 12:2, 12:3, 12:10, 12:21, 13:19, 14:10, 16:3, 16:10, 16:14, 16:20, 16:24, 16:25, 17:5, 20:20, 21:22, 22:15, 22:17, 23:11, 23:16, 23:19, 29:13, 29:17, 30:8, 30:10, 30:13, 30:16, 30:18, 30:25,

31:8, 34:19, 37:15, 39:13, 39:22, 40:6, 40:10, 40:15, 40:18, 41:19, 42:1, 43:2

**exact** [1] - 27:1

**examination** [1] - 29:15

**examinations** [1] - 14:3

**exceed** [2] - 15:17, 38:18

**excessive** [1] - 7:17

**exclude** [7] - 5:19, 5:24, 10:5, 10:19, 11:16, 20:20, 34:5

**excluded** [7] - 16:10, 16:15, 16:20, 16:24, 17:4, 21:21, 22:11

**excluding** [6] - 12:10, 20:9, 22:17, 30:10, 30:12, 30:25

**exclusion** [7] - 12:3, 15:23, 16:3, 19:16, 20:1, 22:15, 23:16

**excuse** [3] - 17:5, 18:17, 34:5

**executing** [3] - 41:18, 41:24, 43:1

**exercise** [1] - 17:19

**exist** [2] - 25:3, 25:22

**exit** [1] - 18:21

**expediting** [1] - 45:19

**experience** [3] - 25:11, 25:12, 25:17

**expert** [13] - 6:11, 15:25, 18:19, 19:2, 19:17, 19:22, 19:23, 20:7, 28:4, 29:25, 35:4, 39:7, 39:12

**expert's** [3] - 13:25, 15:25, 27:5

**experts** [11] - 5:21, 8:12, 13:15, 14:4, 14:6, 14:11, 14:25, 17:20, 18:21, 33:14

**explain** [1] - 18:18

**explanation** [2] - 9:15, 28:21

**extend** [4] - 9:8, 16:22, 17:8, 17:25

**extended** [2] - 21:2, 27:8

**extension** [5] - 19:24, 20:18, 20:21, 31:19, 32:6

### F

**F.2d** [1] - 41:2

**F.2D** [1] - 19:13

**F.2nd** [1] - 9:23

**F.3D** [1] - 16:8

**F.3rd** [1] - 13:4

**facilities** [1] - 7:14

**fact** [12] - 12:13, 13:5, 16:9, 21:21, 22:21, 23:4, 30:18, 31:2, 36:21, 41:20, 44:1

**factor** [1] - 18:7

**factors** [3] - 11:21, 12:9, 16:17

**facts** [3] - 6:3, 15:13, 23:15

**factual** [1] - 29:11

**fail** [1] - 37:2

**failed** [6] - 6:19, 6:25, 7:6, 8:4, 10:21, 12:21, 19:9, 20:17, 20:18, 22:7, 28:21, 40:3, 41:25

**failing** [2] - 22:12

**failure** [5] - 5:16, 20:21, 34:5, 34:7, 35:2

**failures** [1] - 37:4

**falls** [1] - 33:4

**familiar** [1] - 44:4

**family** [1] - 7:16

**far** [4] - 3:7, 10:6, 17:10

**fashion** [1] - 39:6

**favor** [1] - 12:10

**February** [4] - 8:2, 21:20, 35:6, 35:14

**Federal** [3] - 11:3, 15:21, 20:19

**fellow** [1] - 6:20

**few** [1] - 7:4

**fide** [1] - 17:5

**file** [14] - 5:19, 9:10, 9:19, 10:8, 10:19, 20:20, 27:6, 29:1, 29:3, 40:3, 43:24, 43:25, 44:5

**filed** [30] - 5:22, 5:24, 6:1, 6:11, 9:8, 10:15, 10:16, 10:23, 11:15, 19:17, 23:4, 24:7, 26:20, 26:23, 27:7, 28:15, 29:1, 29:4, 31:18, 32:6, 33:12, 33:13, 33:24, 34:5, 39:6, 39:7, 41:20, 43:23, 44:3

**filing** [4] - 17:13, 19:21, 26:5, 33:23

**finally** [1] - 25:9

**Finally** [1] - 39:2

**financially** [1] - 48:14

**findings** [15] - 5:21, 6:17, 7:5, 7:24, 8:1, 14:5, 15:25, 17:23, 18:21, 18:23, 19:1, 19:3, 19:6, 19:7

**First** [4] - 5:1, 12:11, 32:19, 34:15

**first** [5] - 5:16, 11:23, 21:8, 25:15, 34:3

**five** [1] - 26:10

**fix** [1] - 25:13

**fixed** [1] - 10:2

**fixing** [1] - 11:13

**flagrantly** [2] - 32:25

**flouted** [2] - 9:22, 42:24

**flouting** [1] - 23:9

**Following** [1] - 35:12

**following** [5] - 3:1, 6:18, 14:24, 15:3, 16:19

**foot** [1] - 33:11

**FOR** [2] - 2:10, 2:14

**force** [3] - 7:18, 7:21, 7:23

**forced** [1] - 31:7

**Ford** [1] - 19:12

**foregoing** [1] - 48:7

**forgive** [1] - 32:11

**forth** [1] - 48:10

**forward** [1] - 44:3

**forwarded** [1] - 35:5

**four** [4] - 11:20, 21:10, 26:10, 37:22

**Four** [1] - 37:23

**fourth** [2] - 12:5, 18:7

**frankly** [1] - 8:19

**free** [1] - 29:17

**frivolously** [1] - 43:24

**fruitful** [1] - 28:7

**frustrated** [1] - 20:6

**full** [2] - 13:1, 15:14

**fully** [2] - 31:1, 31:2

**functions** [1] - 6:24

**funds** [2] - 27:18, 27:20

**furnish** [1] - 38:4

### G

**gather** [1] - 23:10

**General** [2] - 27:14, 45:24

**GENERAL** [1] - 2:13

**General's** [1] - 4:12

**gentlemen** [1] - 46:10

**GERRY** [1] - 1:22

**given** [1] - 27:18

**Globespanivarant** [1] - 11:6

**Government** [12] - 25:1, 26:12, 27:7, 27:24, 32:12, 32:16, 33:12, 46:4, 46:7, 46:12, 47:2

**Government's** [2] - 28:8, 43:25

**Governor** [2] - 26:9, 27:15, 27:17

**Governors** [1] - 26:9

**grant** [4] - 23:24, 32:17, 43:10

**granted** [2] - 39:21, 41:25

**greater** [1] - 17:10

**grounds** [1] - 20:21

**guess** [1] - 45:24

**guidance** [1] - 33:18

### H

**handling** [1] - 46:22

**hardly** [2] - 11:14, 21:7

**harm** [2] - 6:20, 12:24

**hazardous** [1] - 17:25

**head** [3] - 26:6, 32:1, 46:20

**health** [3] - 8:4, 8:5, 8:8

**hear** [3] - 24:17, 26:10, 26:15

**heard** [3] - 5:7, 24:23, 33:25

**hearing** [23] - 6:8, 6:9, 7:10, 9:13, 12:17, 13:13, 13:21, 13:23, 14:15, 14:17, 16:2, 17:9, 17:23, 18:24, 21:24, 22:2, 22:5, 22:10, 22:11, 34:20, 40:13, 41:18, 45:16

**hearings** [3] - 21:14, 36:19, 36:21

**heart** [3] - 9:21, 20:13, 21:4

**heavily** [1] - 12:9

**held** [9] - 12:23, 16:9, 16:14, 18:24, 21:14, 21:24, 22:10, 40:13, 40:14

**Hello** [7] - 3:6, 4:5, 41:12, 42:4, 42:8, 42:15, 43:12

**help** [1] - 46:7

**hereby** [1] - 48:7

**hereinbefore** [1] - 48:10

**hesitated** [1] - 10:5

**himself** [1] - 44:20

**hired** [1] - 25:10

**history** [3] - 28:19, 33:20, 33:21

**hoc** [2] - 11:15, 29:1

**hold** [1] - 21:18

**Hold** [1] - 41:9

**holding** [1] - 8:2

**Honor** [99] - 3:9, 3:13, 3:14, 3:16, 3:18, 4:4, 4:6, 4:18, 4:23, 5:14, 8:22, 9:20, 10:12, 11:7, 11:14, 11:19, 12:9, 13:11, 14:13, 14:19, 14:23, 15:12, 15:24, 17:9, 17:20, 18:7, 18:18, 19:11, 19:16, 21:7, 21:17, 22:14, 22:21, 23:15, 24:1, 24:3, 24:5, 24:8, 24:16, 24:23, 25:9, 26:16, 27:14, 27:25, 28:8, 28:11, 28:14, 28:15, 28:23, 29:11, 29:19, 29:21, 30:1, 30:3, 30:9, 30:23, 31:17, 34:11, 34:22, 36:9, 36:11, 36:14, 36:15, 36:21, 37:7, 37:11, 37:24, 39:1, 39:17, 39:19, 40:8, 40:12, 41:6, 41:14, 41:16, 41:23, 42:2, 42:6, 42:9, 42:16, 42:22, 43:13, 43:17, 43:19, 44:1, 44:6, 44:10, 44:13, 44:15, 44:22, 44:24, 45:2, 45:10, 45:12, 45:14, 46:12, 46:13, 47:5, 47:8

**HONORABLE** [1] - 2:2

**Honorable** [1] - 3:2

**housed** [1] - 8:8

**housing** [1] - 6:21

## I

**idea** [2] - 15:6, 37:14
**identical** [1] - 19:6
**identified** [3] - 14:2, 19:23, 22:8
**identify** [7] - 8:22, 9:2, 13:14, 13:15, 14:9, 22:6, 39:11
**ignore** [2] - 17:6, 32:25
**ignored** [1] - 9:6
**ill** [4] - 4:13, 5:6, 8:7, 43:22
**immediately** [1] - 37:6
**impaired** [1] - 20:16
**impairs** [1] - 21:4
**impediment** [1] - 12:25
**implement** [2] - 7:6, 8:4
**important** [1] - 24:9
**imposed** [1] - 29:21
**imposing** [1] - 21:16
**impossible** [2] - 34:17, 36:22
**improperly** [2] - 7:18, 40:10
**inability** [1] - 38:12
**inaccuracy** [1] - 9:5
**inaccurate** [1] - 9:6
**inadequate** [1] - 31:23
**inadvertent** [1] - 18:9
**incidents** [1] - 7:21
**including** [2] - 7:9, 7:11
**indicates** [2] - 26:3
**information** [12] - 14:3, 14:7, 15:5, 27:2, 28:5, 31:21, 31:22, 32:9, 35:8, 35:14, 37:15, 38:24
**informed** [2] - 4:15, 42:19
**initial** [3] - 40:24, 43:4, 43:7
**injustice** [2] - 39:24, 40:8
**innocent** [3] - 11:25, 16:5, 16:21
**inoperable** [1] - 7:2
**inquire** [1] - 44:19
**inspections** [1] - 34:1
**institute** [1] - 6:25
**instituted** [1] - 7:13
**insure** [1] - 23:17
**insuring** [1] - 10:1
**intended** [1] - 9:19
**intercede** [1] - 37:9
**interested** [1] - 48:15
**interests** [1] - 11:12
**interrogatories** [1] - 13:24
**intervening** [3] - 39:21, 40:5, 40:21
**interviews** [1] - 18:22
**introduce** [3] - 17:4, 23:19, 31:11
**investigate** [1] - 7:21
**investigating** [1] - 7:15
**involved** [1] - 4:7
**irredeemable** [1] - 12:24
**Island** [1] - 23:8
**Islands** [3] - 3:4, 38:4, 41:2
**ISLANDS** [2] - 1:1, 2:4
**issue** [11] - 5:18, 6:9, 8:21, 18:16, 30:2, 30:3, 34:16, 35:1, 36:14, 39:3, 39:14
**issues** [9] - 5:15, 8:11, 13:20, 13:25, 18:4, 24:8, 29:10, 34:13, 34:22
**item** [1] - 39:25
**itself** [2] - 12:14, 43:20

## J

**Jacobs** [2] - 46:17, 46:20
**jail** [11] - 6:24, 7:12, 7:13, 7:19, 7:20, 23:3, 27:11, 29:25, 33:19, 38:4
**January** [1] - 35:8, 35:21
**Jersey** [2] - 3:3, 48:7
**JERSEY** [2] - 1:23, 2:3
**job** [2] - 25:11, 38:7
**JOHN** [2] - 1:11, 1:22
**Judge** [2] - 32:23, 32:24
**Judges** [1] - 20:11
**judicial** [1] - 29:9
**June** [1] - 15:7
**justice** [1] - 31:24
**Justice** [1] - 3:9

## K

**keep** [1] - 47:4
**knowing** [1] - 37:20
**knowledge** [2] - 9:3, 13:16
**knowledgeable** [3] - 25:10, 25:15, 26:8
**known** [1] - 19:3
**Koplove** [2] - 19:12, 20:24

## L

**large** [1] - 28:17
**last** [5] - 5:1, 5:8, 28:3, 36:1
**late** [3] - 30:7, 31:19, 39:7
**LAW** [1] - 3:21
**law** [6] - 31:1, 31:2, 39:22, 40:5, 40:21, 44:1
**LAWRENCE** [1] - 1:5
**lawyer** [1] - 32:24
**lay** [1] - 33:18
**leading** [1] - 16:17
**learned** [1] - 26:11
**least** [7] - 5:5, 14:24, 15:1, 15:4, 31:6, 37:20, 37:22
**leave** [4] - 9:14, 18:15, 28:22, 32:2
**left** [1] - 5:4
**legal** [1] - 40:7
**length** [1] - 24:25
**lenient** [1] - 32:16
**less** [6] - 9:12, 10:6, 13:13, 14:15, 20:10, 45:17
**letters** [2] - 35:5, 35:15
**lie** [1] - 9:21
**lies** [1] - 21:4
**light** [2] - 17:23, 26:1
**limit** [2] - 32:7, 32:8
**line** [1] - 41:11
**list** [1] - 22:7
**litany** [1] - 17:21
**litigants** [1] - 17:11
**litigate** [1] - 18:5
**litigation** [3] - 26:19, 32:14, 41:22
**Litigation** [5] - 5:11, 8:13, 16:7, 22:18, 39:14
**lived** [1] - 26:7
**lives** [4] - 6:16, 7:17,
17:22, 23:8
**local** [2] - 39:19, 42:23
**LOCATED** [1] - 1:20
**look** [1] - 38:14
**looked** [2] - 21:9, 44:9
**lost** [1] - 14:13
**lurking** [2] - 3:23, 3:25

## M

**maintain** [2] - 6:22, 6:25
**major** [2] - 25:18, 27:22
**man** [2] - 34:1, 34:2
**manage** [2] - 20:12, 21:5
**management** [3] - 9:21, 20:14, 21:4
**manifest** [1] - 39:24
**manner** [1] - 32:14
**March** [7] - 6:6, 13:12, 22:22, 22:24, 39:5, 39:11, 43:8
**Martin** [4] - 5:22, 15:2, 19:1, 19:3
**Martin's** [1] - 8:24
**matter** [6] - 4:3, 10:17, 26:6, 30:20, 32:10, 47:11
**matters** [2] - 40:25, 45:20
**mean** [3] - 12:24, 24:20, 25:19
**meaningful** [1] - 14:14
**meaningfully** [1] - 15:24
**means** [2] - 11:4, 12:3
**medical** [1] - 8:6
**meet** [3] - 15:17, 27:3, 29:18
**meets** [1] - 11:14
**members** [1] - 7:16
**mentally** [1] - 8:7
**mere** [1] - 17:12
**messages** [1] - 5:4
**met** [2] - 11:5, 43:6
**Metzner** [5] - 5:21, 15:1, 22:2, 35:3, 35:6
**Metzner's** [4] - 7:24, 8:24, 19:5, 35:22
**Meyers** [4] - 12:7, 16:16, 16:19, 18:8
**might** [1] - 15:10
**Millen** [1] - 22:8
**Millen's** [2] - 22:9, 22:11
**mind** [2] - 45:18, 47:4
**minimum** [1] - 30:16
**miss** [1] - 26:17
**missed** [1] - 22:17
**MITCHELL** [1] - 1:21
**Monday** [3] - 5:8, 15:3
**monies** [1] - 27:16
**monitoring** [1] - 36:23
**month** [8] - 9:12, 13:13, 14:16, 18:20, 19:17, 19:22, 37:1, 45:17
**monthly** [2] - 36:15, 37:5
**months** [5] - 19:4, 35:9, 37:22, 37:23, 38:23
**morning** [2] - 3:6, 47:10
**most** [4] - 5:16, 7:8, 8:14, 19:6
**motion** [76] - 5:7, 5:18, 5:24, 6:5, 6:10, 10:9, 10:14, 10:19, 10:24, 10:25, 11:8, 11:15, 15:20, 17:13, 17:17, 18:2, 18:6, 19:24, 20:20, 21:6, 22:1, 22:25, 23:1, 23:4, 23:14, 23:18, 23:21, 23:24, 24:4, 24:5, 25:23, 26:2, 26:5, 26:21, 26:24, 27:6, 27:7, 28:15, 28:16, 28:23, 29:1, 29:3, 29:5, 30:22, 31:3, 31:18, 32:17, 33:12, 33:13, 33:24, 34:6, 34:15, 39:4, 39:5, 39:7, 39:18, 39:20, 40:2, 40:20, 41:17, 41:20, 41:23, 41:24, 42:25, 43:9, 43:10, 43:15, 43:20, 43:22, 43:23, 44:3, 44:4, 44:5, 47:3
**motions** [2] - 40:23, 43:24, 43:25
**Motor** [1] - 19:12
**move** [1] - 38:20
**MR** [68] - 3:8, 3:13, 3:18, 3:23, 4:4, 4:6, 4:17, 4:22, 5:14, 10:12, 14:19, 14:22,

15:9, 16:13, 19:15, 24:1, 24:3, 24:16, 24:19, 24:23, 25:9, 25:24, 26:16, 28:11, 31:17, 34:11, 34:13, 35:1, 36:7, 36:9, 36:11, 36:14, 36:20, 37:11, 37:24, 39:1, 40:1, 41:10, 41:13, 41:14, 41:16, 42:5, 42:6, 42:9, 42:11, 42:16, 42:18, 42:22, 43:13, 43:17, 43:19, 44:10, 44:13, 44:22, 44:24, 45:2, 45:10, 45:12, 45:14, 45:19, 46:1, 46:3, 46:5, 46:11, 46:13, 46:19, 47:5, 47:8

**multiple** [3] - 21:14, 22:17, 22:19

**must** [3] - 11:2, 29:21, 41:24

## N

**names** [1] - 27:8

**narrow** [1] - 29:10

**necessarily** [1] - 16:15

**necessary** [1] - 26:19

**need** [10] - 15:6, 19:9, 27:9, 31:21, 32:9, 34:18, 37:8, 39:23, 40:7

**needed** [4] - 14:10, 25:12, 25:22, 27:4

**needs** [2] - 8:9, 46:7

**never** [7] - 5:9, 9:22, 26:13, 26:23, 32:22, 33:15, 38:7

**nevertheless** [1] - 40:17

**NEW** [2] - 1:23, 2:3

**New** [2] - 3:3, 48:6

**new** [5] - 26:7, 34:1, 34:2, 39:22, 40:6

**newer** [1] - 21:11

**next** [2] - 10:23, 37:17

**Next** [1] - 36:13

**normally** [2] - 25:13, 27:13

**notable** [1] - 6:17

**note** [4] - 21:7, 28:23, 41:6, 41:16

**noted** [2] - 7:3, 8:18

**nothing** [2] - 30:15,

38:6

**Nothing** [1] - 46:11

**notice** [2] - 7:9, 18:21

**noticed** [1] - 10:8

**notified** [1] - 20:19

**notify** [1] - 37:1

**noting** [1] - 5:19

**November** [1] - 21:25

**Nowhere** [1] - 11:8, 11:9

**NUMBER** [1] - 1:7

**number** [2] - 39:9, 42:20

## O

**object** [1] - 36:10

**obligation** [1] - 20:3

**obtain** [1] - 14:12

**occasions** [1] - 7:3

**OF** [2] - 1:1, 1:2, 2:3

**offer** [2] - 9:15, 9:25

**offered** [1] - 17:5

**office** [3] - 5:2, 44:12, 45:9

**Office** [1] - 4:12

**officers** [1] - 25:19

**Official** [1] - 48:5

**OFFICIAL** [1] - 2:17

**officials** [1] - 18:23

**once** [1] - 4:7

**one** [9] - 8:21, 10:14, 10:23, 29:1, 29:5, 32:23, 38:2, 38:14, 39:2

**ONE** [1] - 1:22

**One** [1] - 16:17

**ones** [1] - 33:23

**ongoing** [4] - 21:13, 31:7, 43:4, 43:5

**openly** [1] - 23:9

**operate** [1] - 23:5

**operations** [1] - 23:2

**opinion** [3] - 8:23, 9:1, 27:6

**opportunity** [3] - 14:13, 29:14, 31:5

**opposed** [2] - 6:11, 22:9, 24:4

**opposition** [1] - 6:12

**option** [1] - 16:4

**oral** [3] - 44:20, 45:7, 45:8

**ORAL** [1] - 1:16

**order** [50] - 5:17, 6:1, 6:7, 8:11, 8:16, 8:20, 9:7, 9:18, 10:9, 11:11,

11:12, 12:13, 12:14, 12:18, 13:7, 13:12, 15:21, 15:22, 17:7, 19:9, 19:16, 19:18, 20:9, 20:18, 21:3, 21:19, 21:20, 21:23, 22:4, 22:13, 22:23, 22:25, 28:18, 29:2, 29:4, 29:7, 29:8, 29:19, 29:20, 30:4, 36:3, 36:6, 36:24, 38:25, 39:5, 39:11, 40:13, 41:5, 43:8, 46:3

**ordered** [6] - 17:20, 20:7, 37:16, 38:13, 42:1, 43:3

**ordering** [1] - 21:20

**orderly** [1] - 16:25

**orders** [16] - 8:19, 9:21, 9:25, 10:6, 11:22, 20:13, 21:9, 21:13, 21:15, 22:20, 22:24, 23:5, 23:7, 31:13, 31:14, 37:7

**otherwise** [5] - 7:16, 18:22, 23:13, 23:20, 23:22

**ought** [2] - 25:25, 26:1

**outline** [1] - 17:21

**overcrowded** [1] - 20:12

**own** [8] - 8:25, 10:20, 14:4, 14:10, 18:15, 22:25, 29:18, 30:1

## P

**pack** [1] - 12:8

**page** [4] - 10:14, 10:23, 29:1, 29:5

**panels** [1] - 7:2

**papers** [5] - 44:8, 44:9, 44:18, 44:19

**part** [4] - 19:6, 20:5, 28:17, 31:24

**partial** [1] - 39:4

**particular** [3] - 19:1, 27:17, 38:15

**parties** [10] - 6:7, 8:17, 10:2, 11:13, 13:1, 18:3, 29:9, 31:14, 34:18, 48:12

**party** [6] - 10:5, 11:25, 13:6, 16:5, 16:21, 40:16

**passed** [2] - 19:22, 40:4

**past** [8] - 7:4, 21:10, 21:17, 25:7, 25:19, 25:20, 26:17, 28:7

**patience** [2] - 32:19, 32:20

**pattern** [3] - 6:13, 22:14, 30:11

**pay** [1] - 46:4

**pending** [6] - 22:1, 28:23, 30:21, 34:15, 39:3

**Pennsylvania** [1] - 13:9

**penny** [1] - 12:7

**people** [3] - 32:15, 38:20, 38:22

**perhaps** [1] - 22:23

**period** [1] - 16:22

**permit** [2] - 16:6, 17:4

**permits** [1] - 12:20

**permitting** [1] - 16:25

**person** [2] - 25:10, 38:3, 38:7

**personal** [2] - 27:21, 27:23

**personnel** [6] - 13:16, 14:2, 14:3, 19:8, 22:3, 37:20

**personnels** [1] - 27:9

**persons** [1] - 9:3

**ph** [1] - 27:15

**phone** [2] - 5:4, 42:7

**phones** [1] - 7:11

**physical** [1] - 45:5

**place** [4] - 3:1, 7:20, 26:18, 48:9

**placed** [1] - 40:10

**plainly** [1] - 8:19

**plaintiff** [11] - 5:24, 23:10, 24:6, 24:9, 27:8, 27:9, 28:4, 31:21, 32:8, 33:15, 35:17

**plaintiff's** [6] - 6:4, 12:16, 13:15, 22:1, 24:4, 27:5, 32:17, 44:2

**Plaintiff's** [1] - 6:10

**PLAINTIFFS** [2] - 1:7, 2:10

**plaintiffs** [8] - 8:14, 12:19, 13:22, 14:9, 15:23, 17:11, 17:15, 18:16, 19:23, 20:2, 21:11, 22:9, 23:22, 29:13, 29:18, 33:17, 40:17, 43:14

**Plaintiffs** [3] - 21:9,

30:4, 43:2

**plans** [1] - 27:7

**plate** [1] - 29:8

**PLAZA** [1] - 1:22

**pleading** [2] - 39:3, 39:9

**pleadings** [1] - 10:2

**pleased** [1] - 34:3

**Plough** [1] - 9:23

**point** [13] - 4:25, 10:2, 16:13, 19:1, 19:11, 23:16, 36:4, 37:8, 37:13, 38:10, 44:15, 46:19, 46:23

**pointed** [1] - 22:20

**policies** [1] - 8:5

**politics** [2] - 25:11, 25:16

**portion** [2] - 39:10, 41:5

**portions** [1] - 39:12

**position** [6] - 25:2, 25:6, 25:7, 28:8, 40:2, 44:1

**positive** [1] - 25:20

**post** [3] - 11:15, 17:10, 29:1

**post-hoc** [1] - 11:15

**postponing** [2] - 12:4, 17:9

**potentially** [1] - 17:25

**power** [2] - 9:17, 15:21

**practice** [1] - 42:25

**practices** [1] - 8:6

**pre** [3] - 10:1, 17:7, 17:8

**pre-trial** [3] - 10:1, 17:7, 17:8

**precisely** [1] - 40:11

**prejudice** [13] - 12:4, 12:24, 13:6, 15:12, 15:17, 15:20, 15:23, 16:5, 16:21, 23:21, 30:9, 30:24, 31:3

**prejudiced** [2] - 12:1, 12:20, 15:13, 30:4, 30:6, 30:24

**premise** [1] - 40:6

**preparation** [7] - 6:7, 11:24, 12:12, 12:15, 13:12, 13:20, 31:12

**preparations** [1] - 12:17

**prepare** [9] - 13:1, 14:3, 14:4, 15:14, 19:9, 31:8, 34:17, 36:6, 38:25

**prepared** [6] - 14:25,

15:1, 15:2, 37:17, 37:18, 43:21
**present** [5] - 23:10, 26:24, 29:15, 29:17, 39:16
**presented** [1] - 34:19
**presently** [2] - 25:21, 26:18
**preserve** [1] - 23:11
**Press** [1] - 13:4
**pressing** [1] - 5:16
**presume** [1] - 36:16
**presumed** [2] - 12:13, 13:6
**prevent** [2] - 7:13, 40:8
**prevented** [1] - 21:1
**previous** [6] - 7:25, 8:18, 19:7, 22:24, 37:5, 37:14
**previously** [1] - 35:15
**Prison** [3] - 8:13, 27:14, 39:14
**Prisoner** [1] - 7:17
**prisoners** [8] - 6:16, 6:19, 6:20, 7:7, 7:15, 8:7, 23:8, 32:11
**Prisons** [1] - 27:19
**problem** [5] - 4:11, 4:15, 5:11, 25:13, 26:3
**problems** [4] - 6:14, 11:13, 17:22, 27:11
**Procedure** [1] - 11:3
**procedures** [2] - 7:1, 8:5
**Proceed** [1] - 16:12
**proceed** [3] - 5:13, 10:3, 44:25
**proceeding** [1] - 4:10
**proceedings** [2] - 10:1, 17:8
**process** [3] - 7:8, 11:24, 12:12
**processes** [1] - 33:8
**produce** [19] - 9:3, 13:16, 17:21, 22:7, 29:13, 30:8, 30:16, 30:17, 30:18, 35:2, 37:3, 37:15, 37:16, 37:22, 39:12, 40:9, 40:14, 41:19, 42:1
**produced** [6] - 33:15, 36:4, 36:25, 37:6, 37:13
**production** [1] - 13:24
**profound** [1] - 29:24

**progress** [1] - 9:10
**promises** [4] - 32:21, 32:22, 35:20
**promote** [1] - 29:9
**prompt** [3] - 34:16, 34:20, 34:21
**prompted** [1] - 22:25
**promptly** [1] - 23:18
**proof** [4] - 33:10, 40:11, 40:16, 40:17
**proper** [2] - 31:23, 32:14
**properly** [2] - 33:19, 43:22
**propound** [1] - 13:24
**prosecuting** [1] - 23:13
**prospective** [1] - 27:22
**protect** [1] - 6:19
**protections** [2] - 8:15, 17:16
**provide** [5] - 20:3, 27:8, 27:16, 28:4, 31:20
**provided** [2] - 8:15, 42:13
**providing** [1] - 20:23
**provision** [5] - 5:17, 5:25, 8:13, 8:21, 28:24
**pursuant** [1] - 12:17
**push** [1] - 16:1
**put** [5] - 26:18, 32:13, 33:17, 38:7

**Q**

**qualifications** [1] - 25:17
**quite** [2] - 8:19, 40:22
**quote** [5] - 12:24, 12:25, 15:15, 20:25, 41:1
**quoting** [8] - 9:22, 11:5, 16:24, 17:3, 19:21, 20:2, 20:10, 20:23

**R**

**raise** [3] - 20:20, 34:14, 34:24
**raised** [4] - 8:12, 18:16, 36:18, 36:20
**Rather** [2] - 9:8, 20:23

**rather** [1] - 12:25
**re** [1] - 16:7
**reach** [2] - 4:25, 31:22
**reached** [2] - 23:16, 37:7
**read** [1] - 44:18
**readily** [1] - 7:12
**ready** [1] - 19:8
**really** [3] - 4:18, 18:11, 44:16
**rearguing** [1] - 40:25
**reason** [5] - 9:15, 9:24, 32:7, 32:11, 37:2
**reasonable** [1] - 31:10
**reasonably** [1] - 27:3
**reasoned** [2] - 17:3, 20:2
**rebuttal** [1] - 43:5
**receive** [6] - 32:8, 32:9, 35:10, 35:11, 35:23, 35:24
**received** [3] - 19:4, 35:18, 36:2
**receiver** [1] - 22:2
**recess** [1] - 47:7
**recite** [1] - 16:6
**recognize** [2] - 47:1, 47:2
**recognized** [1] - 5:5
**recognizes** [1] - 20:13
**reconsider** [4] - 9:7, 41:5, 42:12, 42:23
**reconsideration** [12] - 28:24, 39:4, 39:6, 39:18, 39:20, 40:20, 40:23, 41:17, 41:23, 42:25, 43:10, 43:15
**Record** [1] - 40:1
**record** [6] - 4:24, 20:4, 20:24, 26:12, 38:17, 39:9
**records** [1] - 37:18
**recruitment** [1] - 25:18
**refer** [1] - 13:8
**Reform** [2] - 8:13, 39:14
**regard** [5] - 19:5, 19:11, 28:22, 30:22, 34:19
**regarding** [7] - 13:25, 14:7, 21:25, 23:19, 28:24, 39:7, 40:15
**Regarding** [1] - 7:24
**Regardless** [1] -

33:7
**regardless** [1] - 40:16
**regards** [1] - 43:14
**registering** [1] - 40:24
**regulations** [1] - 24:14
**rehashed** [1] - 40:20
**reign** [1] - 29:17
**relative** [2] - 48:11, 48:13
**release** [1] - 18:1
**relevant** [3] - 9:3, 13:16, 14:2
**reliable** [3] - 7:7, 7:20, 8:4
**relief** [1] - 17:14
**remain** [2] - 7:2, 17:16
**remedial** [13] - 5:20, 8:25, 9:11, 13:18, 14:7, 16:1, 23:7, 23:19, 27:10, 29:23, 29:24, 30:14, 33:8
**remedy** [3] - 15:23, 23:17, 25:3
**Remember** [1] - 33:12
**rendering** [1] - 5:20
**repaired** [1] - 39:16
**repeat** [1] - 16:13
**repeated** [2] - 21:13, 21:19
**repeatedly** [1] - 16:14
**replete** [2] - 26:12, 38:17
**reply** [1] - 40:3
**report** [8] - 9:11, 19:4, 19:5, 19:17, 20:2, 20:7, 36:15, 46:23
**Reporter** [4] - 45:22, 46:7, 48:6
**REPORTER** [3] - 1:20, 2:17, 3:16
**reporter** [1] - 3:15
**Reporters** [1] - 46:8
**reporting** [1] - 46:16
**reports** [19] - 5:22, 6:12, 8:24, 14:1, 17:21, 18:19, 18:20, 19:7, 19:22, 29:25, 36:25, 37:5, 37:14, 37:21, 38:5, 38:15, 39:8, 39:12
**request** [10] - 13:24, 13:25, 35:13, 35:17, 37:12, 37:15, 37:19,

38:19, 40:7, 44:2
**requested** [2] - 31:20, 39:10
**requests** [3] - 35:2, 35:7, 35:8
**require** [3] - 20:10, 20:19, 31:13
**required** [4] - 8:22, 13:14, 37:1, 38:11
**requirement** [3] - 27:3, 40:14, 40:15
**requirements** [1] - 33:4
**requires** [1] - 5:19
**requiring** [3] - 22:5, 39:11, 40:9
**reset** [1] - 5:7
**resolution** [2] - 6:4, 45:20
**resolve** [5] - 5:15, 10:17, 10:18, 21:5, 32:10
**resolved** [1] - 15:10
**resolves** [1] - 17:17
**resources** [2] - 18:4, 29:10
**respond** [6] - 15:24, 27:5, 28:10, 31:18, 43:18, 43:22
**responded** [1] - 5:9
**response** [12] - 5:2, 5:6, 5:19, 6:2, 9:9, 18:14, 19:9, 28:4, 31:16, 35:18, 35:19, 43:23
**responsibilities** [1] - 36:23
**responsive** [1] - 35:2
**restrained** [1] - 7:19
**result** [4] - 5:10, 7:7, 8:8, 24:10
**resulting** [1] - 8:9
**results** [1] - 26:14
**return** [1] - 11:18
**returning** [1] - 15:12
**returns** [1] - 46:16
**review** [6] - 5:23, 6:3, 14:6, 30:1, 35:9, 35:12
**reward** [1] - 38:12
**rewards** [1] - 12:21
**rightfully** [1] - 40:14
**rightly** [1] - 43:7
**rigorous** [1] - 13:11
**rings** [5] - 16:10, 41:8, 42:3, 42:14, 43:11
**ripe** [1] - 39:15
**risk** [1] - 17:10
**Rodale** [1] - 13:3

**RPR** [1] - 2:16
**Rule** [4] - 11:2, 15:21, 20:12, 26:25
**rule** [2] - 23:23, 42:23
**Rules** [2] - 11:3, 20:19
**rules** [4] - 7:9, 24:14, 32:13, 39:19
**ruling** [2] - 34:20, 34:21
**run** [1] - 33:19

## S

**S/STEPHEN** [1] - 48:21
**safety** [2] - 6:16, 23:8
**sanction** [1] - 11:21
**sanctions** [9] - 15:22, 20:22, 21:12, 21:16, 22:1, 29:4, 30:19, 37:4
**sanity** [1] - 31:11
**saturation** [1] - 37:8
**schedule** [5] - 8:10, 13:12, 17:18, 21:3, 34:7
**scheduled** [3] - 9:13, 13:13, 14:23
**scheduling** [28] - 5:17, 6:1, 6:6, 8:11, 9:6, 9:21, 10:6, 10:9, 11:22, 12:12, 12:14, 12:18, 13:6, 15:22, 17:7, 19:18, 20:9, 20:13, 20:18, 21:23, 22:4, 22:12, 22:23, 27:1, 28:18, 29:2, 29:4, 40:13
**Scheduling** [1] - 9:25
**Schering** [1] - 9:23
**Schrader** [20] - 3:12, 4:13, 4:18, 4:25, 10:9, 10:10, 10:16, 10:18, 24:6, 26:20, 27:6, 29:3, 32:6, 35:4, 35:5, 43:21, 43:24, 44:3, 44:5, 46:16
**Schrader's** [1] - 5:4
**second** [2] - 11:25, 35:1
**Second** [1] - 12:19
**secretary** [1] - 5:2
**securities** [1] - 7:1
**security** [1] - 6:23
**see** [2] - 27:22, 34:3
**seek** [6] - 9:14,

20:18, 20:21, 21:12, 28:22, 29:4
**seeking** [5] - 11:16, 23:1, 24:10, 32:3, 32:4
**seem** [2] - 37:12, 40:6
**self** [4] - 29:11, 41:18, 41:24, 43:1
**self-executing** [3] - 41:18, 41:24, 43:1
**self-serving** [1] - 29:11
**sent** [2] - 35:5, 46:6
**separate** [2] - 23:5, 30:20
**series** [1] - 35:20
**serious** [3] - 8:8, 8:11, 18:4
**Seriously** [1] - 8:6
**serve** [1] - 11:12
**served** [1] - 31:23
**serving** [1] - 29:11
**set** [18] - 8:5, 9:18, 10:20, 12:14, 13:11, 15:20, 15:4, 16:20, 17:2, 17:18, 18:14, 22:4, 28:16, 30:23, 35:7, 45:8, 47:3, 48:10
**setting** [1] - 8:10
**settlement** [2] - 6:10, 17:14
**several** [4] - 5:1, 5:14, 7:3, 19:4
**severely** [1] - 20:15
**share** [2] - 30:14, 46:2
**shoreline** [1] - 32:4
**short** [2] - 12:4, 15:19
**shortly** [3] - 22:7, 35:3, 35:23
**show** [4] - 11:4, 28:5, 29:5, 33:10
**showing** [1] - 20:15
**Shrader** [2] - 44:11, 44:19
**Shut** [1] - 42:7
**sick** [1] - 44:21
**side** [1] - 29:15
**sided** [1] - 32:15
**similar** [1] - 19:19
**simple** [1] - 9:25
**simply** [14] - 9:6, 9:9, 9:16, 9:19, 10:20, 11:11, 17:6, 18:14, 21:1, 36:5, 36:21, 37:8, 40:20, 41:20
**sincere** [1] - 29:23

**single** [1] - 36:2
**sit** [1] - 41:21
**site** [1] - 18:23
**sitting** [1] - 6:7
**situation** [1] - 26:4
**six** [3] - 9:18, 21:2, 21:11
**slips** [1] - 25:1
**sloth** [1] - 23:2
**solving** [1] - 18:4
**someone** [1] - 46:22
**sorry** [2] - 41:10, 42:6
**sort** [2] - 4:15, 28:12
**sought** [1] - 19:24
**speaks** [1] - 43:20
**specific** [1] - 20:14
**specificity** [3] - 8:23, 20:4, 39:12
**ST** [1] - 1:2
**stability** [1] - 34:4
**staff** [6] - 6:16, 6:23, 7:16, 7:22, 37:21
**stand** [2] - 44:19, 47:7
**standard** [4] - 10:25, 11:18, 15:17, 15:18
**standards** [1] - 11:15
**STANLEY** [1] - 2:2
**Stanley** [1] - 3:2
**started** [1] - 25:18
**State** [1] - 48:6
**state** [3] - 11:9, 11:11, 31:25
**statement** [1] - 29:8
**States** [3] - 3:3, 3:4, 48:5
**STATES** [4] - 1:21, 2:2, 2:4, 2:18
**stating** [2] - 29:7, 31:18
**stay** [2] - 8:13, 18:1
**stays** [1] - 17:13
**stenographically** [1] - 48:9
**step** [2] - 31:2, 31:11
**Stephen** [1] - 48:5
**STEPHEN** [2] - 2:16, 48:21
**steps** [2] - 25:20, 26:18
**still** [7] - 8:3, 25:3, 30:20, 42:17, 42:18, 43:17, 45:6
**stop** [1] - 33:7
**story** [1] - 29:16
**strategy** [2] - 13:2, 15:15
**strides** [1] - 26:22

**struck** [1] - 28:12
**structure** [1] - 29:21
**subject** [1] - 5:18
**subjected** [1] - 7:17
**submit** [2] - 12:20, 45:23
**submitted** [3] - 35:7, 35:15, 46:9
**substantive** [1] - 17:14
**suffering** [1] - 8:9
**sufficient** [1] - 14:6
**sufficiently** [1] - 6:23
**suggest** [1] - 22:21
**sum** [2] - 8:3, 42:2
**supervision** [2] - 23:2, 28:17
**support** [5] - 6:12, 29:6, 29:12, 30:19, 39:13
**supports** [4] - 22:15, 30:12, 31:1, 31:3
**supposed** [1] - 41:22
**surely** [1] - 32:20
**switchboard** [1] - 42:19
**system** [11] - 7:1, 7:7, 7:13, 7:20, 8:4, 25:4, 26:22, 33:3, 33:4, 38:2, 38:7
**systemic** [2] - 6:14, 17:21
**systems** [1] - 7:2

## T

**tactical** [1] - 23:12
**technicalities** [2] - 32:2, 32:13
**techniques** [1] - 7:23
**Telephone** [4] - 41:8, 42:3, 42:14, 43:11
**telephone** [1] - 16:10
**telephonic** [1] - 3:1
**TELEPHONIC** [1] - 1:16
**terminate** [11] - 6:10, 15:20, 23:1, 25:23, 26:5, 28:15, 31:4, 33:12, 33:24, 34:6, 47:3
**terminated** [1] - 26:20
**termination** [10] - 6:11, 17:13, 18:2, 18:5, 21:6, 23:13, 23:17, 23:21, 29:19, 30:22
**terms** [1] - 33:18

**tested** [1] - 32:20
**testified** [1] - 22:3
**testify** [2] - 14:25, 15:1
**testifying** [1] - 15:3
**testimony** [4] - 14:24, 22:9, 22:12, 48:8
**testing** [1] - 25:18
**THE** [76] - 1:1, 2:2, 2:3, 2:10, 2:14, 3:6, 3:10, 3:15, 3:16, 3:17, 3:19, 3:22, 3:25, 4:5, 4:10, 4:21, 4:24, 10:8, 14:17, 14:20, 15:7, 16:11, 19:14, 23:25, 24:2, 24:12, 24:17, 24:20, 25:5, 25:23, 25:25, 28:9, 31:15, 32:18, 34:12, 34:25, 36:6, 36:8, 36:10, 36:12, 36:18, 37:10, 37:23, 37:25, 39:25, 41:9, 41:12, 41:15, 42:4, 42:7, 42:10, 42:15, 42:17, 42:21, 43:12, 43:16, 43:18, 44:7, 44:11, 44:17, 44:23, 44:25, 45:3, 45:11, 45:13, 45:18, 45:21, 46:2, 46:4, 46:6, 46:14, 46:15, 46:25, 47:1, 47:6, 47:9
**themselves** [1] - 9:17
**theoretical** [1] - 17:19
**therefore** [1] - 41:4
**Therefore** [1] - 17:15
**thereof** [1] - 39:13
**third** [3] - 12:2, 15:19, 36:14
**Third** [18] - 9:20, 9:24, 10:4, 11:18, 12:8, 12:23, 13:4, 15:16, 16:2, 18:8, 19:15, 19:16, 19:20, 20:1, 22:16, 22:18, 40:22
**Thomas** [1] - 4:22
**THOMAS** [1] - 1:2
**threaten** [1] - 6:15
**threatening** [1] - 21:15
**three** [5] - 7:25, 15:3, 34:22, 35:9, 38:4
**throughout** [1] - 7:12
**Throughout** [1] - 26:22

tight [3] - 8:10, 17:18, 34:8
timely [1] - 39:6
TMI [2] - 16:7, 22:18
TO [1] - 2:3
today [6] - 3:11, 23:23, 25:7, 26:7, 46:10
tolerate [1] - 8:20
top [2] - 25:13, 25:14
total [1] - 15:4
tour [8] - 35:4, 35:6, 35:10, 35:11, 35:12, 35:22, 35:23, 36:1
toured [1] - 19:2
tours [3] - 7:25, 14:8, 18:22
trained [2] - 6:23, 7:23
transcript [2] - 45:23, 48:8
treated [2] - 8:7, 41:17
treating [1] - 42:25
trial [19] - 10:1, 11:24, 12:4, 12:12, 12:14, 13:2, 13:19, 15:15, 16:5, 16:16, 16:20, 17:1, 17:7, 17:8, 19:22, 20:11, 22:8, 33:9
tried [3] - 4:12, 4:25, 31:21
true [1] - 48:7
truly [2] - 25:12, 28:5
try [1] - 32:8
trying [2] - 32:1, 33:18
Turnbull [1] - 27:15
Turner [1] - 9:23
twice [1] - 4:7
two [11] - 9:13, 14:20, 14:24, 21:17, 23:5, 35:14, 36:15, 36:17, 37:7, 38:21, 38:24

## U

unable [2] - 10:17, 45:5
unavailable [1] - 4:18
unconstitutional [1] - 6:13
under [8] - 11:2, 13:12, 15:21, 18:8, 19:18, 23:5, 39:19, 42:23

undoubtedly [2] - 12:11, 12:19
unfortunate [1] - 26:24
Unfortunately [1] - 43:21
unintentional [1] - 12:6
UNITED [4] - 1:21, 2:2, 2:3, 2:18
United [3] - 3:3, 3:4, 48:5
Unlike [1] - 22:23
unlike [1] - 39:6
unnecessary [2] - 7:18, 8:9
unquote [2] - 10:3, 20:25
Unquote [6] - 12:25, 13:2, 17:2, 19:25, 20:6, 20:16
unreasonable [1] - 37:12
unreliable [1] - 7:3
untenable [1] - 17:25
unusual [2] - 20:5, 20:25
up [4] - 8:3, 33:9, 39:19, 42:2
upheld [1] - 19:16
uphold [1] - 31:12
upholding [1] - 20:1
uses [1] - 7:18
utility [1] - 20:15

## V

vacate [2] - 16:5, 39:10
Vaguely [2] - 4:4, 4:6
valid [1] - 29:15
various [4] - 26:9, 36:18, 36:20, 38:1
vehicles [1] - 40:23
versus [5] - 9:23, 12:7, 13:3, 19:12, 41:1
via [1] - 3:1
VIA [1] - 1:16
viable [1] - 16:4
view [1] - 27:23
violate [1] - 12:16
violated [5] - 7:9, 12:15, 29:20, 30:3, 30:23
violates [1] - 13:6
violating [3] - 12:12, 15:22, 28:25
violation [1] - 11:23

violations [6] - 21:13, 22:19, 31:7, 33:20, 43:5, 43:6
VIRGIN [2] - 1:1, 2:4
Virgin [4] - 3:4, 23:8, 38:3, 41:2
virtue [1] - 8:12
visible [1] - 4:1
voicemail [1] - 5:5
vs [1] - 1:9

## W

wait [1] - 36:5
wants [1] - 23:18
Warden [1] - 18:25
Ware [4] - 13:3, 15:15, 16:6, 22:16
warranted [1] - 16:4
Warren [1] - 3:8
WARREN [1] - 2:12
ways [1] - 28:13
weapons [1] - 7:11
Wednesday [1] - 3:5
week [8] - 4:13, 5:1, 5:8, 14:24, 18:16, 36:1, 36:5, 37:17
weeks [5] - 9:13, 9:18, 21:2, 38:21, 38:25
weigh [1] - 12:9
welcome [1] - 34:2
wheels [1] - 28:16
whole [2] - 26:22, 47:3
wide [1] - 23:2
wilful [1] - 22:20
willful [3] - 12:6, 18:10, 30:11
William [1] - 42:17
WILLIAMS [34] - 2:12, 3:8, 3:13, 4:4, 4:6, 4:17, 4:22, 24:3, 24:16, 24:19, 24:23, 25:9, 25:24, 26:16, 31:17, 36:11, 37:11, 37:24, 41:10, 41:13, 42:6, 42:18, 43:17, 43:19, 44:10, 44:13, 44:22, 44:24, 45:2, 45:10, 45:12, 46:11, 46:19, 47:5
Williams [8] - 3:8, 4:2, 24:2, 31:15, 36:10, 37:10, 43:16, 46:15
window [1] - 30:15
withdrawing [1] - 26:2

witness [1] - 22:7
witnesses [2] - 14:11, 22:6
wood [1] - 12:8
word [1] - 32:13
works [2] - 45:25, 46:1
worst [1] - 22:23
written [1] - 13:23

## Y

years [9] - 7:4, 21:11, 21:17, 24:13, 25:8, 26:8, 32:20, 36:16, 36:17
yesterday [2] - 4:8, 4:19
yourself [1] - 4:1